1998 OK CR 41

**George OCHOA, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–96–339.

Court of Criminal Appeals of Oklahoma.

June 30, 1998.

Rehearing Denied Aug. 8, 1998.

Kurt Greer, Bert Richard, Assistant Public Defenders, Oklahoma City, for Appellant at trial.

Robert Macy, District Attorney, Susan Caswell, Assistant District Attorney, Oklahoma City, for Appellee at trial.

Carolyn L. Merritt, Assistant Public Defender, Oklahoma City, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## *OPINION*

CHAPEL, Presiding Judge.

¶ 1 George Ochoa was tried jointly with Osbaldo Torres by a jury in Oklahoma County District Court, Case No. CF–93–4302. Ochoa was convicted of two counts of First Degree Murder with Malice Aforethought, in violation of 21 O.S.1991, § 701.7(A) and one count of First Degree Burglary, in violation of 21 O.S.1991, § 1431.[1] At the conclusion of the capital sentencing phase of the trial, the jury found the existence of two aggravating circumstances: (1) there existed the probability that Ochoa would commit criminal acts of violence that would constitute a continuing

---

1. Torres was also convicted of two counts of first degree malice murder and burglary. *See Torres* *v. State,* 1998 OK CR 40.

threat to society,[2] and (2) Ochoa knowingly created a great risk of death to more than one person.[3] The jury recommended Ochoa be sentenced to death for both murders and to twenty (20) years imprisonment for burglary.[4] The Honorable Charles L. Owens sentenced Ochoa accordingly. Ochoa appealed his conviction and sentence to this Court.[5]

### Facts

¶2 During the early morning hours of July 12, 1993, Francisco Morales and his wife, Maria Yanez, were shot and killed in the bedroom of their Oklahoma City home. The sound of gunfire woke Yanez's daughter Christina, who was 14 years old in the summer of 1993. Christina called 911 and told the operator that she believed her step-father, Morales, may have been firing the gun. After hanging up the telephone, she looked out her bedroom door. A light was on in the living room; Christina saw two men. One man was wearing a white t-shirt and the other man was wearing a black t-shirt. Christina stated the man in the black t-shirt had something in his hand, but she did not know what it was. Christina initially denied knowing the two men, but eventually identified Ochoa as the man in the black t-shirt and Torres as the man in the white t-shirt.

¶3 The shooting also awakened Christina's step-brother, Francisco, who was eleven years old in the summer of 1993. Francisco saw the man in the black t-shirt shoot his father. He could not identify the gunman.

¶4 The police quickly responded to Christina's 911 call. While en route to the Yanez/Morales home, Officer Coats arrested Torres and Ochoa, who were walking together a short distance from the homicide. The men were sweating and nervous, and Coats claimed he observed blood on the clothing of the men.

¶5 A short time before the shootings, Torres and Ochoa parked their car at a friend's house. A witness observed one of the men take a gun from the trunk of the car and put the gun in his pants. This gun was different from the gun used in the murders. The witness stated one of the men was Ochoa. She could not identify the other man, but asserted that it was the other man—and not Ochoa—who put the gun in his pants. Another witness testified that the man with Ochoa was Torres.

¶6 The jury convicted Ochoa and Torres on all counts and the case proceeded to the capital sentencing phase of trial. The State argued that Ochoa and Torres posed a continuing threat to society based on the circumstances of the murders and the defendants' membership in the Southside Locos, a local gang. To show that Ochoa created a risk of death to more than one person, the State offered the death of the two victims and the presence of three children in the home at the time of the murders. The defense presented in mitigation Ochoa's personal history, his history of mental illness, his borderline mental retardation and pleas of mercy from his family. The jury found the existence of both aggravating circumstances. After weighing the aggravating and mitigating evidence, the jury imposed the death penalty.

### Competence to Stand Trial

¶7 The first issue Ochoa raises on appeal is whether he was competent to stand trial in 1996. Ochoa argues his case should be reversed because the determination that he was competent to stand trial was made under the old "clear and convincing evidence" standard, which the Supreme Court ruled infirm in *Cooper v. Oklahoma.*[6] The State contends

---

**2.** 21 O.S.1991, § 701.12(7).

**3.** 21 O.S.1991, § 701.12(2).

**4.** Torres was also sentenced to death for both murders and to twenty (20) years imprisonment for burglary.

**5.** Ochoa also filed a motion for a new trial, request to supplement the record and a request for an evidentiary hearing. Since this motion was not filed timely, it is denied. 22 O.S.1991, § 953, Rule 2.1, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App.

**6.** 517 U.S. 348 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). In *Cooper,* the Supreme Court ruled unconstitutional Oklahoma's standard for determining whether a defendant is competent to stand trial. The statute, 22 O.S.1991, § 1175.4(B), provided that a defendant in a criminal prosecution is presumed competent to stand trial unless he proves his incompetence by clear

that if the Court finds error, the case should not be reversed but remanded for a retrospective competency hearing. Although the question of Ochoa's competency was decided under the infirm "clear and convincing evidence" standard, the case need not be reversed nor remanded for a retrospective competency hearing.

¶ 8 Ochoa waived jury trial on the issue of competency. When a defendant waives a jury competency trial and the hearing is held before the trial court, this Court will review de novo the question of whether the record supports a finding that the defendant is competent to stand trial under the new "preponderance of the evidence" standard.[7] A defendant's competency to stand trial is defined as "the *present* ability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him and to effectively and rationally assist in his defense."[8] As a corollary, Oklahoma statutes define incompetency as "the present inability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him and to effectively and rationally assist in his defense."[9]

¶ 9 Here, in a proceeding before the trial court, Ochoa, through counsel, stipulated to Dr. Warren Smith's report in which Dr. Smith found (1) Ochoa appreciated the nature of the charges against him although "he cannot remember the event for which he is alleged responsible,"[10] and (2) Ochoa could consult with his lawyer and rationally assist in his defense. Ochoa offered no other evidence. Based on Dr. Smith's report, the court found Ochoa "able to appreciate the charges against him,"[11] and "able to consult with his lawyer and rationally assist in the preparation of his defense."[12] The court ordered the proceedings to resume.

¶ 10 This evidence supports the finding that Ochoa was competent to stand trial under the "preponderance of the evidence" standard. Dr. Smith's report is the only evidence in the record. There is nothing in the report to suggest that Ochoa would be incompetent under the lower burden of proof. On appeal, Ochoa argues that Dr. Murphy, who testified on Ochoa's behalf during sentencing, would have provided testimony that Ochoa was not competent to stand trial under the now-lower burden of proof. A review of Murphy's testimony does not support this claim. Based on the record below, we find that Ochoa was competent to stand trial and defense counsel failed to show, based on a preponderance of evidence, that he was incompetent.

¶ 11 Ochoa also argues that trial counsel was ineffective for failing to challenge the competency determination.[13] Because we find, based on a de novo review of the record, that Ochoa would have been deemed competent to stand trial under a preponderance of the evidence standard, Ochoa was not prejudiced by trial counsel's actions. Counsel was not ineffective.

¶ 12 In his reply brief, Ochoa also argues that when a defendant waives a jury trial on competency the Court should impose a waiver standard similar to the one imposed

and convincing evidence. The Supreme Court ruled that the "clear and convincing evidence" standard placed too high a burden of proof on the defendant and struck down this standard of proof. In response to *Cooper*, this Court determined the new burden of proof to be applied in competency determinations is preponderance of the evidence. *Cooper v. State*, 924 P.2d 751, 752 (Okl.Cr.1996). *See* 22 O.S.Supp.1996 § 1175.4(B) ("The court, at the hearing on the application, shall determine, by a preponderance of the evidence, if the person is incompetent.")

7. *See Smith v. State*, 932 P.2d 521, 528 (Okl.Cr. 1996), *cert. denied*, — U.S. —, 117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997).

8. 22 O.S.Supp.1992, § 1175.1 (emphasis added). *See Dusky v. United States*, 362 U:S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960); *Miller v. State*, 751 P.2d 733, 736–37 (Okl.Cr.1988).

9. 22 O.S.Supp.1992, § 1175.1.

10. May 31, 1995 Tr. at State's Ex. 1.

11. *Id.*

12. *Id.*

13. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

in *Brewer v. State,*[14] which dealt with the procedure to be followed when a defendant stipulates to an aggravating circumstance. This Court already recognizes that the post-examination competency jury trial may be affirmatively waived [15] and the *Brewer* standard is not appropriate here. Moreover, the record shows that Ochoa knowingly, intelligently and affirmatively waived jury trial on the issue of competency. Indeed, the trial court explained to Ochoa several times what a jury trial on competency would entail and advised Ochoa that it would hold the jury trial if Ochoa wished. Ochoa stated he understood his rights, he understood what a competency jury trial was, and he wished to proceed to trial. Ochoa's attorney also stated that Ochoa understood the function of the jury trial, that Ochoa wanted to stipulate to the competency report, which is discussed above, and that Ochoa wished to proceed to trial on the merits. This exchange and waiver are adequate.[16] Error did not occur and relief is not warranted.

### Jury Selection

¶ 13 In his sixth proposition of error, Ochoa complains that procedural and substantive error occurred during the jury selection process depriving him of his right to a constitutionally impaneled jury. In making this claim, Ochoa presents three arguments.

■ ¶ 14 First, Ochoa claims error occurred when the trial court required him and Torres to share their nine peremptory challenges and denied defense requests that each defendant be allotted nine separate challenges. Section 655 of Title 22 provides, in pertinent part: "if two or more defendants are tried jointly they shall join in their chal-

lenges; provided, that when two or more defendants have inconsistent defenses they shall be granted separate challenges for each defendant as hereinafter set forth." Consistent with this statute, this Court has stated "when the defenses of codefendants are inconsistent, they should not be required to share peremptory challenges." [17] The Court has put some parameters on "inconsistent defenses." In *Neill v. State,* the Court stated "in some cases, the 'inconsistency' goes to the level of culpability while in other cases the 'inconsistency' goes to guilt or innocence. Where the issue is restricted to the level of each co-defendant's culpability, co-defendants may be required to share peremptory challenges." [18]

■ ¶ 15 Ochoa and Torres did not have inconsistent defenses. The defense of both men was that they did not kill Yanez and Morales. Since Ochoa and Torres' defenses were not inconsistent, the court did not err in denying the request for separate peremptory challenges.

■ ¶ 16 Second, Ochoa claims that the trial court erred in failing to sua sponte dismiss Juror Harris for cause. Juror Harris told the court and counsel that he had served as a deputy sheriff in Kern County, California for seventeen and a half years, but that he was now retired. Harris also stated he could be fair. Neither Ochoa nor Torres moved to strike Harris for cause. Eventually Ochoa used a peremptory challenge to remove Harris; Torres objected to the removal.

■ ¶ 17 At issue here is the provision in 38 O.S.1991, § 28, which states that "[s]heriffs or deputy sheriffs" are not qualified to

14. 650 P.2d 54, 63 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983).

15. *Lillard v. State,* 852 P.2d 756, 757 (Okl.Cr. 1993) (citing *Kiser v. State,* 782 P.2d 405, 408–09 (Okl.Cr.1989)).

16. *Kiser v. State,* 782 P.2d 405, 408 (Okl.Cr.1989) (defendant affirmatively waived post-examination competency hearing by a jury when he withdrew motion for hearing and requested case proceed to preliminary hearing).

17. *Woodruff v. State,* 825 P.2d 273, 276 (Okl.Cr. 1992). *See Neill v. State,* 827 P.2d 884, 891 (Okl.Cr.1992) ("[c]o-defendants tried jointly who have inconsistent defenses shall be granted separate peremptory challenges"). The Constitution does not require that defendants tried together be granted separate peremptory challenges. *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154 (1919).

18. 827 P.2d at 891 (citing *Fox v. State,* 779 P.2d 562, 568 (Okl.Cr.1989); *Fowler v. State,* 779 P.2d 580, 582 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990)).

serve on a jury. However, since Juror Harris was a retired, as opposed to active, deputy sheriff he does not fall under the statutory disqualification.[19] Moreover, Juror Harris made clear he could be impartial and he would properly consider the death penalty. The court did not err in failing to sua sponte strike Harris for cause.

¶ 18 Finally, Ochoa complains the court erred when it overruled certain motions regarding voir dire. Ochoa complains the trial court erred in denying a motion for individual voir dire. This Court has repeatedly stated individual voir dire is not required and the decision to allow individual voir dire is left to the sound discretion of the trial court.[20] The trial court did not abuse its discretion. Ochoa further maintains that the court erred in denying a motion that it ask certain death-qualifying questions and a motion challenging the death-qualifying nature of voir dire. Although the trial court refused to ask certain questions requested by the defense, the questions the trial court posed to the jury comported with *Witherspoon v. Illinois*[21] and *Morgan v. Illinois*.[22] The trial court did not commit error in its questioning of the jury. Moreover, trial counsel was not inhibited in his questioning of jurors on the death penalty. Ochoa has failed to show prejudice under this proposition and relief is denied.

### First Stage of Trial

¶ 19 Ochoa raises a number of propositions of error concerning the first stage of trial. In the second proposition of his brief, Ochoa argues he was denied due process because the prosecution denied his investigators independent access to the crime scene. For the reasons stated below, we deny this proposition.

¶ 20 Ochoa and Torres were originally tried in October 1995, but the case ended in mistrial. Before the second trial, Ochoa moved the trial court to order the person now living in the victims' house to allow defense investigators into their home to investigate the crime scene. Apparently the person who was living in the Yanez/Morales home refused to allow defense investigators into the house. The trial court stated it was without authority to order a third party to allow defense investigators into the home and overruled the motion.[23]

¶ 21 Shortly before the second trial, Ochoa learned that the prosecution intended to re-investigate the crime scene. The assistant district attorney agreed to permit defense investigators to accompany the State's investigators on their re-examination of the crime scene. Defense counsel sent a letter to the assistant district attorney confirming that his investigators would accompany the State investigators to the crime scene. In a handwritten note at the bottom of the letter, the assistant district attorney wrote:

> It is agreed that neither [defense investigators] will not take photographs or measurements of the interior of the home or interfere w/ the technical investigator.[24]

According to defense counsel, the addendum was a last minute addition and was not part of the original deal. Defense counsel stated that nonetheless they thought it better to go to the house with that condition than not to go at all. Defense investigators accompanied the police and observed the measurements and the investigation taken by the officers. Defense investigators were not allowed an independent investigation and were not allowed to confirm the correctness of the police measurements. As a result of the new inves-

---

**19.** *Nickell v. State*, 885 P.2d 670, 676 (Okl.Cr. 1994) (former FBI agent who knew district attorney was not disqualified from jury service under 38 O.S.1991, § 28); *Coats v. State*, 56 Okl.Cr. 26, 33, 32 P.2d 955, 958 (1934) (former deputy sheriffs not disqualified from jury service).

**20.** *Malone v. State*, 876 P.2d 707, 711 (Okl.Cr. 1994) ("decision to allow individual voir dire of potential jurors is also committed to the sound discretion of the trial court and is not a right guaranteed a defendant").

**21.** 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

**22.** 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

**23.** Ochoa does not challenge this ruling.

**24.** Vol. III O.R. at 521.

tigation, the prosecution produced a new diagram of the interior of the house that differed in certain respects from the diagram offered at the first trial. The trial court found the differences were minor.

¶ 22  On appeal, Ochoa argues that denying his investigators the ability to take independent measurements deprived him of due process. In making this argument, Ochoa relies on *Brady v. Maryland*[25] and other cases addressing the State's withholding of exculpatory evidence. These cases are not on point because the State did not withhold exculpatory evidence from Ochoa. Similarly, Ochoa's analogy to cases dealing with the State's presentation of false evidence[26] are not on point because there is no reason to believe the State presented false evidence. More apropos is Ochoa's argument that the State's restrictions precluded him from putting on his defense thus depriving him of due process and a fair trial. In support of this argument, Ochoa cites several out-of-state cases. Although these cases are not binding on this Court, the cases indicate how other courts have treated similar problems.

¶ 23  In *People v. Davis*,[27] a New York trial court granted a motion to allow the defendant access to the crime scene and harshly criticized the district attorney for trying to limit the defendant access to the scene. The court stated (1) the district attorney had no possessory interest in the property, (2) the district attorney had no statutory authority to limit defendant's access to the scene, and (3) any effort by the district attorney to do so was improper. In *Henshaw v. Commonwealth of Virginia*,[28] the defendant wished access to a crime scene which was in the possession of a third party. The court found that denial of access to the crime scene may deprive the defendant of due process and fundamental fairness. Rely-

ing on the state constitution, the court found that although the trial court should have ordered access to the crime scene, the error was harmless.[29]

¶ 24  Here, the restrictions the State placed on Ochoa's investigators are petty, unjustified and improper. The State contended that the restrictions were necessary to prevent interference with the State's investigation, but this argument is spurious. We are dismayed that the State would place such unnecessary and inappropriate barriers in front of a defendant's legitimate and proper attempt to prepare his defense. Nonetheless, Ochoa has failed to show that these restrictions curtailed his defense or deprived him of his right to due process. Although Ochoa claims that the two diagrams—the one used in the first trial and the one used in this trial—differ significantly from one another, he has not shown what these significant differences are or how they affected his defense. In contrast, the trial court noted that the differences were only slight. Accordingly, we find the State's improper action did not harm Ochoa and neither reversal nor modification of sentence is an appropriate remedy.

¶ 25  Ochoa also argues, under this proposition of error, that relief ought to be granted because the State destroyed latent fingerprints that were unusable but which might have contained sufficient ridge information to be of exculpatory value. In *Arizona v. Youngblood*,[30] the Supreme Court held "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[31] This Court adopted the *Youngblood* standard

**25.**  373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See also Kyles v. Whitley* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *State v. Munson*, 886 P.2d 999 (Okl.Cr.1994).

**26.**  *United States v. Young*, 17 F.3d 1201 (9th Cir.1994).

**27.**  169 Misc.2d 977, 647 N.Y.S.2d 392 (N.Y.Co. Ct.1996).

**28.**  19 Va.App. 338, 451 S.E.2d 415 (1994).

**29.**  Ochoa also cites *State v. Davenport*, 696 So.2d 999 (La.1997), which is simply a one sentence order and we cannot determine how or why the court issued that particular order.

**30.**  488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).

**31.**  *Id.*

in *Hogan v. State*.[32] Ochoa has not shown that the State acted in bad faith when it destroyed the latent prints, and relief is not warranted.

¶ 26 Ochoa raises a related complaint in Proposition VIII arguing that the trial court should have instructed the jury that they could draw a negative inference from Officer Goforth's destruction of fingerprint evidence. We disagree. Due process *does not* impose "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."[33] As stated earlier, unless a defendant can show bad faith by the police, destruction of potentially useful evidence does not constitute a due process violation. Ochoa cites two out-of-state cases that impose a higher standard on police, but this case is controlled by *Hogan v. State* and *Arizona v. Youngblood*. We find, in the absence of a showing of bad faith, the failure of the trial court to provide an instruction allowing the jury to draw a negative inference from the destruction of evidence does not violate Ochoa's right to due process. However, such an instruction may be an appropriate sanction where the defense has made a showing of bad faith.

¶ 27 In Proposition III, Ochoa relates that on the second day of trial, the prosecution revealed that the previous afternoon an informant in the Oklahoma County jail had advised an assistant district attorney that Torres had claimed to have shot and killed Yanez and Morales. Torres also allegedly claimed Ochoa was present at the shootings. This claim contradicted the State's theory that Ochoa shot the victims and Torres aided and abetted in their killing. Upon hearing this information, Ochoa's counsel withdrew

their announcement of ready, requested a continuance to investigate and moved for a severance. The prosecutor stated he would not call the informant to testify. The trial court denied Ochoa's motions for a continuance and severance.

¶ 28 Ochoa asserts the trial court erred by failing to grant a continuance. This Court has stated "the decision whether to grant or deny a motion for continuance rests within the sound discretion of the trial court and will not be disturbed absent abuse of such discretion."[34] "When considering the overruling of a motion for a continuance, we will examine the entire record to ascertain whether or not the appellant suffered any prejudice by the denial."[35] Here, although the court denied the continuance, defense counsel had tried to speak with the informant while Ochoa's case was still in voir dire, but the informant refused to talk. There is nothing indicating that additional time would have changed his position. Ochoa has not shown he was prejudiced by the denial of the continuance. The court did not abuse its discretion.

¶ 29 Ochoa also argues his and Torres' trial ought to have been severed. Where two defendants have "mutually antagonistic defenses," separate trials ought to be held and compelling joinder of trials may result in reversible error.[36] Mutually antagonistic defenses occur when each defendant seeks to inculpate the other and exculpate himself.[37] The Court has stated, "it is not enough that the defenses of the co-defendants are inconsistent, in conflict or are otherwise unreconcilable. To be considered 'mutually antagonistic,' the two theories of defense must be in direct contravention and the parties must each place blame with the co-defendant."[38] The Court has further

**32.** 877 P.2d 1157, 1161 (Okl.Cr.1994), *cert. denied*, 513 U.S. 1174, 115 S.Ct. 1154, 130 L.Ed.2d 1111 (1995).

**33.** *Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337.

**34.** *Salazar v. State*, 852 P.2d 729, 735 (Okl.Cr.1993).

**35.** *Bryson v. State*, 876 P.2d 240, 254 (Okl.Cr.1994), *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995).

**36.** *Cannon v. State*, 827 P.2d 1339, 1341 (Okl.Cr.1992); *Lafevers v. State*, 819 P.2d 1362, 1364 (Okl.Cr.1991).

**37.** *Lafevers*, 819 P.2d at 1365.

**38.** *Id.* at 1365–66.

stated "one defendant's attempt to cast blame on the other is not in itself a sufficient reason to require separate trials," [39] and "[m]ere conflicting defenses, standing alone, do not constitute the showing of prejudice necessary for judicial severance." [40]

¶ 30 The defenses here were not mutually antagonistic. As stated earlier, the defense of both men was that they did not commit the crime and both men focused their attack on undermining the eye-witness testimony. Further, the State did not call the informant to testify.[41] Thus, the defendants did not engage in any sort of finger-pointing or blame. The trial court did not err in refusing to sever the defendants' trials.[42]

¶ 31 In his fourth proposition of error, Ochoa, for the first time, challenges the admissibility of Christina Yanez's identification of him and Torres. Since Ochoa did not lodge a contemporaneous objection to the evidence, relief will only be granted upon a showing that plain error occurred as a result of the admission of this evidence.

¶ 32 Christina's identification of Ochoa and Torres was crucial to the State's case. Initially, she denied knowing the men who killed her parents. Christina admitted this initial denial explaining she made the initial denial because she was frightened. The initial denial does not render Christina's subsequent identification inadmissible; the evidence merely goes to the issue of credibility and reliability, which was a proper issue for the jury to decide.[43]

¶ 33 Ochoa next contends that Christina's subsequent identification of the men was tainted because Christina saw the men in handcuffs at the crime scene. The record does not support this contention. There is no testimony that Christina ever saw the defendants prior to telling Officer Mullenix at the police station that Ochoa was one of the men she saw in her home that night. Ochoa points to testimony that, after their arrest, Ochoa and Torres were taken to the crime scene and held in handcuffs there for some time. It was possible for the Yanez/Morales neighbors to see the defendants under arrest. However, there was no evidence that Christina saw the defendants or even knew they were there, and defense counsel never questioned Christina about this matter. Moreover, Officer Brett Macy testified that neither Christina nor her stepbrother Francisco came into contact with the defendants at the crime scene. Based on this record, Ochoa has failed to show that there was a show-up identification and we cannot say that under the totality of the circumstances Christina's identification was tainted and/or unreliable.[44] Accordingly, admission of her testimony and identification was proper.

¶ 34 Ochoa also alleges it was error for Detective Mullenix to testify that Christina identified Ochoa at the police station. Again Ochoa failed to lodge a contemporaneous objection and we review for plain error. This Court has stated "a witness, after making an in-court identification of the defendant, may testify that 'at a particular day, place, and time or times, [he or she] had

---

**39.** *Neill,* 827 P.2d at 886.

**40.** *Id.* at 886–87. *See Zafiro v. United States,* 506 U.S. 534, 538, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993) ("[m]utually antagonistic defenses are not prejudicial *per se* ").

**41.** *See Plantz v. State,* 876 P.2d 268, 273 (Okl.Cr. 1994), *cert. denied,* 513 U.S. 1163, 115 S.Ct. 1130, 130 L.Ed.2d 1091 (1995) (finding severance not required where defendants did not present mutually antagonistic defenses and State did not introduce incriminating statement by nontestifying co-defendant).

**42.** *Neill,* 827 P.2d at 886 (absent abuse of discretion, trial court's decision to try defendants jointly will not be disturbed on appeal).

**43.** *See Woodruff v. State,* 846 P.2d 1124, 1134 (Okl.Cr.), *cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993) (jury is exclusive judge of weight of evidence and credibility of witnesses). *Cf. Snow v. State,* 876 P.2d 291, 295 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120, '30 L.Ed.2d 1120 (1995) (noting cautionary instruction on eye-witness identification was not necessary and instructing jury that it was sole judge of witness credibility was proper).

**44.** *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Tibbetts v. State,* 778 P.2d 925, 928–29 (Okl.Cr.1989).

occasion to see, recognize and identify the defendant as the person who committed the crime.' "[45] However, "[o]nly the identifier may testify that an identification was made.... Testimony by a third party that an identification was made, or that a particular person was identified is ... error."[46] Nonetheless, "[w]hen such testimony follows an in-court identification of the accused by the identifier the error has been found to be harmless."[47] Here, it was error for Mullenix to testify that Christina told him that one of the intruders was Ochoa. Nonetheless, the testimony was merely cumulative of Christina's testimony. The error is not prejudicial and relief is not warranted.

■ ¶ 35 Ochoa claims in his fifth proposition of error that his arrest is invalid because Officer Coats lacked probable cause to execute his warrantless arrest of Ochoa and Torres. This Court has stated, "The test for a valid warrantless arrest is whether at the moment the arrest was made the officer had probable cause to make it—whether at that moment the facts and circumstances within his knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense."[48] Ochoa asserts that Officer Coats did not have a description of the defendants until after he arrested the men. However, a fair reading of the record below supports the trial court's conclusion that Officer Coats heard the description of the defendants over the radio prior to arresting them. Further, Coats testified the men were perspiring and there was blood on Torres' clothes. These factors sup-

port the trial court's conclusion that there was probable cause to arrest. This proposition is denied.

■ ¶ 36 Ochoa makes several complaints about alleged evidentiary errors in his seventh proposition of error. First, Ochoa complains the prosecution sought to introduce evidence of Ochoa's gang affiliation during the first stage of trial. Although the trial court ruled that such evidence was inadmissible during first stage, the prosecution elicited from Officer Tays that the suspects—Ochoa and Torres—might be gang members. There was no objection to this testimony.[49] On four occasions during closing argument, the prosecution referred to the defendants, either directly or indirectly, as gang members. Defense objected to two of the comments on the grounds that the statement was not in evidence;[50] the objections were overruled. We review these claims for plain error and we are troubled that the prosecution attempted to deliberately inject gang evidence into the first stage of trial. Not only did the evidence and comments regarding Ochoa's gang membership violate the trial court's order, but also such evidence was irrelevant to the question of guilt or innocence as the gang evidence was in no way connected to the Yanez/Morales' murders. While we find the use of gang evidence in the first stage of trial to be error, Ochoa has failed to show that the error was sufficiently prejudicial. Accordingly, relief is denied.

■ ¶ 37 Ochoa next complains that, over objection, Officer Robertson was allowed to testify about the inconclusive results of an FBI gun powder residue examination.

**45.** *Scales v. State*, 737 P.2d 950, 952 (Okl.Cr. 1987) (quoting *Hill v. State*, 500 P.2d 1075, 1078 (Okl.Cr.1972)).

**46.** *Kamees v. State*, 815 P.2d 1204, 1207 (Okl.Cr. 1991) (citation omitted).

**47.** *Id.* at 1207–08. *See Trim v. State*, 808 P.2d 697, 699 (Okl.Cr.1991).

**48.** *Castellano v. State*, 585 P.2d 361, 365–66 (Okl. Cr.1978). *See* 22 O.S.1991, § 196 ("A peace officer may, without a warrant, arrest a person ... [w]hen a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it").

**49.** A defendant waives error when he fails to lodge a contemporaneous objection at trial. *Hooker v. State*, 887 P.2d 1351, 1365 (Okl.Cr. 1994), *cert. denied*, 516 U.S. 858, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995).

**50.** An objection is waived if the grounds for the objection were different at trial than on appeal. *Valdez v. State*, 900 P.2d 363, 380 (Okl.Cr.), *cert. denied*, 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995); *Mitchell v. State*, 884 P.2d 1186, 1197 (Okl.Cr.1994), *cert. denied*, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995).

This testimony was hearsay[51] and should not have been allowed. However, we find the error harmless and deny relief.

¶ 38 Third, Ochoa contends the State failed to make an adequate showing that Garcia was unavailable to testify in person. We disagree. At trial, the prosecution advised the trial court that they could not locate Francisco Garcia and wished to introduce his testimony from the first trial in lieu of live testimony. "This Court has long held that the State must satisfy two threshold requirements before prior testimony may be admitted into evidence. The prosecution must prove, '(1) [t]he actual unavailability of the witness despite good faith and due diligent efforts to secure the presence of the witness at trial; and, (2) the transcript of the witness' testimony bears a sufficient indicia of reliability to afford the trier of fact a satisfactory basis for evaluating the truth of the prior testimony.'"[52] Ochoa contends that the State failed to satisfy the first prong of this test because it did not exercise due diligence in locating Garcia. To the contrary, the State adequately attempted to locate Garcia and the trial court properly ruled that the State exercised due diligence. Admission of Garcia's previous testimony was not error.

¶ 39 Fourth, Ochoa asserts that Officer Mullenix injected an evidentiary harpoon into the trial. This Court has defined evidentiary harpoons as follows: "(1) they are generally made by experienced police officers; (2) they are voluntary statements; (3) they are willfully jabbed rather than inadvertent; (4) they inject information indicating other crimes; (5) they are calculated to prejudice the defendant; and (6) they are prejudicial to the rights of the defendant on trial."[53] Officer Mullenix's testimony was not an evidentiary harpoon. Mullenix's comment was a legitimate response to counsel's cross-examination questions. Moreover, Mullenix did not introduce information of other crimes; he simply indicated that he did not pursue another suspect in this case because he believed the police had arrested the right men. The officer's testimony is not an evidentiary harpoon and we decline to grant relief.

¶ 40 Next, Ochoa objects to a number of photographs admitted at trial including Exhibits 105–09 and 111–123, which were crime scene photographs of both victims, and Exhibit 62, which included photographs found in the victim's purse. At trial, Ochoa only objected to Exhibits 106 and 107. His objections were overruled.

¶ 41 The decision to admit photographs rests within the sound discretion of the trial court.[54] "The test for admissibility of a photograph is not whether it is gruesome or inflammatory, but whether its probative value is substantially outweighed by the danger of unfair prejudice."[55] Moreover, "[t]he probative value of photographs of murder victims can be manifested in numerous ways, including showing the nature, extent and location of wounds, establishing the corpus delicti, depicting the crime scene, and corroborating the medical examiner's testimony."[56]

¶ 42 In this case, although the State introduced eighteen pictures of the victims' bodies at trial, Ochoa only objected to two of the photographs. These two photographs were no more gruesome than the other sixteen. Moreover, exhibits 105–09 and 111–123 were probative of the nature

**51.** The State does not argue that the evidence is not hearsay. Rather, citing *Simpson v. State*, 876 P.2d 690 (Okl.Cr.1994), the State contends that relief is not warranted under the plain error standard. *Simpson* is not the correct standard to review this error because defense objected to the testimony on the grounds of hearsay.

**52.** *McCarty v. State*, 904 P.2d 110, 128 (Okl.Cr. 1995) (quoting *Smith v. State*, 546 P.2d 267, 271 (Okl.Cr.1976)).

**53.** *Bruner v. State*, 612 P.2d 1375, 1378–79 (Okl. Cr.1980).

**54.** *McCormick v. State*, 845 P.2d 896, 898 (Okl. Cr.1993).

**55.** *Hooks v. State*, 862 P.2d 1273, 1280 (Okl.Cr. 1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994).

**56.** *Trice v. State*, 853 P.2d 203, 212–13 (Okl.Cr.), *cert. denied*, 510 U.S. 1025, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993).

and extent of the wounds, corroborated the medical examiner's testimony, depicted the crime scene and established the corpus delicti. The trial court did not err in admitting these photographs.

¶ 43 Ochoa also complains about Exhibit 62, which was the victim's purse and contents thereof, including photographs of the victims before their deaths. Generally, photographs of victims before their deaths are not probative [57] and, in this case, the photographs should not have been admitted. However, Ochoa did not object to the evidence and he has failed to show plain error occurred in either stage of trial.

¶ 44 Finally, Ochoa argues that, as a whole, the errors discussed above deprived him of a fair trial or a fair sentencing hearing. We disagree and decline to grant relief under this proposition of error.

¶ 45 The issue in Ochoa's ninth proposition of error is the appropriate aiding and abetting instructions to be used in a malice murder case when the evidence reflects that the defendant aided and abetted in first degree malice murder. At the outset, it should be noted that the State's theory of the case was that Ochoa was the shooter and that Torres aided and abetted in the killings. The evidence supports this theory. Ochoa appears to argue that the evidence also suggests that he may have simply aided and abetted in the killings. This claim is, at best, tenuous. Nonetheless, we review Ochoa's objections to the aiding and abetting instructions.

¶ 46 This Court has stated that "in a malice murder case the State must prove the aider and abetter personally intended the death of the victim and aided and abetted with full knowledge of the intent of the perpetrator." [58] "Aiding and abetting in a crime requires the State to show that the accused procured the crime to be done, or aided, assisted, abetted, advised or encouraged the commission of the crime." [59] Moreover, while mere presence does not constitute a criminal act, "only slight participation is needed to change a person's status from mere spectator into an aider and abettor." [60]

¶ 47 Ochoa argues the standard Oklahoma Uniform Jury Instructions 1st ed. (OUJI–CR 1st ed.) on aiding and abetting, which were given to the jury in his case, were inadequate to set forth the elements of aiding and abetting in a malice murder case.[61] At issue are Jury Instructions 11–12, which are identical to OUJI–CR 1st ed. 204–05. Ochoa contends the standard aiding and abetting instructions replace the specific intent to kill in a malice murder case with a general criminal intent, thus, lessening the State's burden of proof.

¶ 48 The question here—the appropriate aiding and abetting instructions in a malice murder case—was answered in *Johnson v. State*.[62] Like Ochoa, the appellant in *Johnson* complained that the trial court erred in using the Oklahoma Uniform Instructions on aiding and abetting in a first degree malice murder case. Like Ochoa, Johnson argued the instructions allowed the jury to replace a general intent for a specific intent to kill thus lessening or changing the State's burden of proof. The *Johnson* Court rejected this argument finding that these instructions in conjunction with the instructions on first degree murder properly set out Oklahoma law and channeled the jury's discretion. *Johnson* controls here. Accordingly, we find the instructions in Ochoa's case properly set forth the law, did not diminish the State's burden of proof and adequately

**57.** *Peninger v. State*, 811 P.2d 609, 611 (Okl.Cr. 1991) (admission of photograph of victim before death not proper).

**58.** *Johnson v. State*, 928 P.2d 309, 315–16 (Okl. Cr.1996). *Accord Cannon v. State*, 904 P.2d 89, 99 (Okl.Cr.1995); *but see Conover v. State*, 933 P.2d 904, 914–16 (Okl.Cr.1997).

**59.** *Spears v. State*, 900 P.2d 431, 438 (Okl.Cr.) (citations omitted), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995).

**60.** *Id.*

**61.** The trial court used the OUJI–CR 1st ed., which went into effect in 1981. About a month after Ochoa's trial, this Court issued the revised OUJI–CR 2d ed.

**62.** 928 P.2d at 315–16.

channeled the jury's discretion. Plain error did not occur.

¶ 49 Ochoa also complains because the instructions do not set out separate aiding and abetting instructions for murder and burglary. We find the instructions are not misleading or confusing, and relief is not warranted.

¶ 50 In his tenth proposition of error, Ochoa argues that Jury Instruction 6 is erroneous. Jury Instruction 6 instructed Ochoa's jury that:

> No person may be convicted of Murder in the First Degree unless his conduct caused the death of the person allegedly killed. A death is caused by conduct if the conduct is a substantial factor in bringing about the death and the conduct is dangerous or destroys life.[63]

There was no objection to the instruction; we review for plain error.

¶ 51 As Ochoa points out the comments to OUJI–CR 1st ed. 426—which is essentially the same as Instruction 6 in this case—recommends the instruction only be given when the actual cause of death is disputed. The State concedes that the facts of this case do not warrant giving the instruction. In *Smith v. State*[64] a similar error occurred. There, despite finding error, the Court found that "[t]he instructions, when read as a whole, accurately state the applicable law and preclude the possibility that the jury may have believed it appropriate to convict Appellant of first degree murder absent a finding of intent."[65] Likewise, here the instruction did not confuse the jury as to its role or lessen the State's burden of proof. Ochoa has failed to show how he was burdened by such an instruction. There was no plain error.

¶ 52 In his eleventh proposition of error, Ochoa argues the evidence is insufficient to sustain his convictions. We dis-

agree. The evidence at trial revealed that Ochoa and Torres went to the Yanez/Morales home during the early morning hours of July 12, 1993. They parked their car several blocks from the victims' home and removed a gun from the car. The men forcibly entered the victims' home. Ochoa and Torres' activities awakened the Yanez/Morales children, who observed some of the defendants' actions. Francisco, victim Morales' son, observed a man in a black t-shirt shoot his father. Christina, victim Yanez's daughter, identified Ochoa as the man in the black t-shirt. Christina identified Torres as the other man in her home. Both men were arrested a short distance from the Yanez/Morales home. This evidence amply supports Ochoa's convictions for murder and burglary.

### Prosecutorial Misconduct

¶ 53 In Proposition XX, Ochoa alleges prosecutorial misconduct occurred during closing arguments in both the first and second stage of trial. At trial, Ochoa failed to object to many of the comments now raised as errors on appeal. Ochoa has waived such objections. Other comments about which Ochoa now complains fall within the broad parameters of effective advocacy and do not constitute error. Nonetheless, several of the prosecutor's comments warrant closer examination.

¶ 54 During first stage closing argument, the prosecutor argued: "All I've got to say is why do you think we're asking you to convict? Do you think we're trying to prosecute somebody that's innocent?"[66] Torres objected to the comment stating "there is a presumption of innocence."[67] The trial court stated, "That's correct, but—proceed."[68] Since Ochoa did not object to the comment, we review for plain error. In *Miller v. State*,[69] the Court found it was fundamental error for the prosecutor to state in closing argument that "[the cloak of inno-

---

63. Vol. III O.R. at 573.

64. 932 P.2d 521, 533–534 (Okl.Cr.1996).

65. *Id.* at 534. *See Sadler v. State*, 846 P.2d 377, 387 (Okl.Cr.1993).

66. Vol. VIII Tr. at 185.

67. *Id.*

68. *Id.*

69. 843 P.2d 389 (Okl.Cr.1992).

cence had] been ripped away from him by the testimony of three men—four men, actually. [The defendant] stands guilty as charged."[70] Likewise, in *Hamilton v. State*,[71] the Court found it error for the prosecutor to state that the cloak of innocence had been stripped from the defendant; however, the Court found the error harmless. Here, although the prosecutor did not use the phrase "cloak of innocence," his rhetorical question that he would not prosecute an innocent man impermissibly treaded on Ochoa's presumption of innocence. Such argument cannot be condoned. Nonetheless, like in *Hamilton*, the comment did not affect the verdict and plain error did not occur.

¶ 55  In second stage closing argument, the prosecutor argued that if the jury sentenced the defendants to a term of imprisonment the defendants would have food and shelter while the victims "lie cold in their graves."[72] This Court has condemned similar arguments by the same prosecutor,[73] and we continue to do so here. Nonetheless, there was no objection to the comment and we can not say that the comment constituted plain error. The prosecutor also overstated the gang evidence and argued that the motive for the killings was to gain higher status in the gang. The evidence did not support this claim. In addition, the prosecutor improperly pleaded with the jury to do justice "and the only way you can do that is bring back a sentence of death."[74] He also told the jury "If this isn't a death penalty case, what is?"[75] It is error for a prosecutor to refer to facts not in evidence and it is error for the prosecutor to state his personal opinion as to the appropriateness of the death penalty.[76] We are disturbed that the prose-

cutor risked reversal on appeal by employing such improper tactics. However, Ochoa has failed to show that the comments affected the outcome of his case and we find the errors harmless.

### Capital Sentencing Stage of Trial

¶ 56  Ochoa's twelfth and thirteenth propositions of error concern the continuing threat aggravating circumstance used to support his death sentence. In Proposition XII, Ochoa argues the trial court erred in allowing evidence of his gang affiliation to be introduced to prove continuing threat. In Proposition XIII, Ochoa argues the evidence was insufficient to support the jury's finding that he posed a continuing threat to society. These two propositions are closely related, and we consider them together.

¶ 57  Oklahoma provides that the death penalty may be considered an appropriate punishment for first degree murder only in certain specific cases, which are narrowly defined by statutory aggravating circumstances.[77] At issue here is the continuing threat aggravating circumstance which Oklahoma defines as the "existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."[78] To prove this aggravating circumstance, the State relied on (1) the facts of the crime itself, and (2) Ochoa's affiliation with the Southside Locos, a local gang.

¶ 58  Ochoa argues that admission of evidence of his gang affiliation was error. As an initial matter, we note that in his reply brief Ochoa raises the issue of whether the admission of the gang affiliation evidence

---

70.  *Id.* at 390.

71.  937 P.2d 1001, 1009–10 (Okl.Cr.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 716, 139 L.Ed.2d 657 (1998).

72.  Vol. X Tr. at 286–87.

73.  *Duckett v. State*, 919 P.2d 7, 19 (Okl.Cr.1995).

74.  Vol. X Tr. at 301.

75.  *Id.* at 297.

76.  *McCarty v. State*, 765 P.2d 1215, 1221(Okl.Cr.1988) ("Mr. Macy improperly ex-

pressed his personal opinion as to the death penalty by stating, 'this defendant deserves it ... This is a proper case for the death penalty ... and justice demands it.' Such argument was not based on evidence supporting any alleged aggravating circumstance, but was simply a statement of Mr. Macy's personal opinion as to the appropriateness of the death penalty and, as such, was clearly improper.")

77.  21 O.S.1991, § 701.12.

78.  21 O.S.1991, § 701.12(7).

violated *Daubert v. Merrell Dow Pharmaceuticals*,[79] and *Taylor v. State*.[80] Because Ochoa did not raise this issue in his brief-in-chief, the issue is waived and we will not consider it.[81]

¶ 59 In his brief-in-chief, Ochoa argues that admission of the gang evidence violated the First and Fourteenth Amendments of the federal constitution and violated the Supreme Court's ruling in *Dawson v. Delaware*.[82] In his majority opinion in *Dawson*, Chief Justice Rhenquist held that "the First and Fourteenth Amendments prohibit the introduction in a capital sentencing proceeding of the fact that the defendant was a member of an organization called the Aryan Brotherhood, where the evidence has no relevance to the issues being decided in the proceeding."[83] Although the Court recognized "the First Amendment protects an individual's right to join groups and associate with others holding similar beliefs,"[84] the Court rejected Dawson's claim that evidence of his membership in the Aryan Brotherhood was per se invalid.

¶ 60 In finding evidence of Dawson's membership in the Aryan Brotherhood to be improper, the Court appears to have been particularly struck by two facts: (1) the Aryan Brotherhood evidence was not connected to the murder of Dawson's victim, who was white; and (2) the prosecution failed to prove that the Aryan Brotherhood was involved in any criminal activity. Rather, at issue in *Dawson* was simply the following stipulation: " 'The Aryan Brotherhood refers to a white racist prison gang that began in the 1960's in California in response to other gangs of racial minorities. Separate gangs calling themselves the Aryan Brotherhood now exist in many state prisons including Delaware.' "[85] Without any other evidence of criminal activity, Dawson's membership in the Aryan Brotherhood simply showed he was a racist

and/or a member of a racist organization, and that alone is not proper evidence. Nonetheless, the Court did not close the door to all evidence relating to a defendant's associations. The Court noted, "In many cases, for example, associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society. A defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future."[86]

¶ 61 The issue before us is Ochoa's membership in the Southside Locos. In contrast to *Dawson*, here the State introduced not only evidence of Ochoa's membership in the gang, but also introduced evidence that the Southside Locos engaged in criminal activity ranging from graffiti to drug trafficking to murder. This type of membership in a criminal gang is the type of associational evidence that the Supreme Court viewed as relevant and permissible in *Dawson*. The problem here for the State is not the admissibility of the evidence itself, but the ultimate probative value of this evidence in this particular case.

¶ 62 The evidence of Ochoa's membership in or affiliation with the Southside Locos is, at best, of marginal value. There is no evidence that the murders of Maria Yanez or Francisco Morales were in any way connected to the gang or committed on behalf of or to earn status in the gang. Indeed, the State in its brief explicitly states, "No motive was ever discerned for the crime and it appears the Morales' home may have been picked at random."[87] Further, although the State introduced evidence that the Southside Locos engaged in a variety of criminal activities, the State utterly failed to tie Ochoa to these criminal activities. There is absolutely no

**79.** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**80.** 889 P.2d 319, 329–30 (Okl.Cr.1995).

**81.** Rule 3.4(F)(1), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App.

**82.** 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992).

**83.** *Id.* at 161, 112 S.Ct. at 1095.

**84.** *Id.* at 162, 112 S.Ct. at 1096.

**85.** *Id.* at 162, 112 S.Ct. at 1096.

**86.** *Id.* at 166, 112 S.Ct. at 1098.

**87.** St. Br. at 63.

evidence that Ochoa ever engaged in any kind of criminal activity connected with the Southside Locos. The only evidence of Ochoa's affiliation with the gang is that Ochoa told a police officer that he was a member of the Southside Locos and he sported a tattoo of a "cholo," which is a purported symbol of gang membership. The State offered nothing else to show the nature, extent or value of Ochoa's relationship with the gang. Such lack of connection between the gang's criminal activity and Ochoa makes this evidence, while admissible, of very marginal value as to the question of whether Ochoa himself poses a continuing threat to society. The marginal quality of this evidence thus begs the next question: is the evidence sufficient to support the continuing threat aggravating circumstance. The answer is no.

¶ 63 As stated above, the State not only failed to show that Ochoa engaged in any criminal gang activity, but also the State failed to show that Ochoa ever committed any crime. Ochoa had no prior criminal record and he had no prior unadjudicated offenses. There was no evidence that since the murders Ochoa had engaged in any violent or illegal activities. This lack of evidence of criminal activity on the part of Ochoa stands in marked contrast with the requirement "that the State present suffi-

cient evidence concerning prior convictions or unadjudicated crimes to show a pattern of criminal conduct that will likely continue in the future to support its 'continuing threat' contention.' " [88] The State utterly failed to make such a showing here.

¶ 64 In other cases in which this Court has found the evidence sufficient to support the continuing threat aggravating circumstance, the State has introduced evidence of prior criminal acts of violence,[89] prior unadjudicated offenses,[90] or evidence of criminal activity occurring after the crime.[91] We have none of that here. An instructive case is *Malone v. State*.[92] In *Malone*, to support the continuing threat aggravating circumstance, the State introduced evidence that nineteen years before the current case, the defendant had been charged with shooting with intent to kill. The Court found that prior charge to be too remote and concluded that the State failed to prove continuing threat. Likewise, in *Perry v. State* [93] the Court found the evidence insufficient to support continuing threat where the only evidence introduced to support this aggravating circumstance was (1) a witness' belief that Perry would kill him if he testified against Perry, and (2) the circumstances of the crime. The Court concluded, "at most, the State proved an isolated act of violence committed by a man who suffered from severe drug and alcohol abuse.

**88.** *Perry v. State*, 893 P.2d 521, 536 (Okl.Cr.1995) (quoting *Malone v. State*, 876 P.2d 707, 717 (Okl. Cr.1994)).

**89.** *See e.g. Bryan*, 935 P.2d at 361 (supporting continuing threat was defendant's previous conviction for solicitation for murder and other unadjudicated bad acts); *Smith*, 932 P.2d at 536 (supporting continuing threat was conviction for assault and battery with dangerous weapon, history of spousal abuse and expert testimony of defendant's inability to control his rage); *Allen v. State*, 923 P.2d 613, 621 (Okl.Cr.1996), *vacated on other grounds*, —— U.S. ——, 117 S.Ct. 1551, 137 L.Ed.2d 699 (1997) (supporting continuing threat was prior convictions for pointing weapon, history of violent arguments with wife and girlfriend, and attempt to kill police officer after killing victim).

**90.** *See e.g. Bryan*, 935 P.2d at 361 (supporting continuing threat was defendant's previous conviction for solicitation for murder and other unadjudicated bad acts); *Smith*, 932 P.2d at 536 (supporting continuing threat was conviction for

assault and battery with dangerous weapon, history of spousal abuse and expert testimony of defendant's inability to control his rage); *Johnson*, 928 P.2d at 318 (supporting continuing threat were previous threats of violence against wife and prior threats of imposing vigilante justice); *Allen*, 923 P.2d at 621 (supporting continuing threat was prior convictions for pointing weapon, history of violent arguments with wife and girlfriend, and attempt to kill police officer after killing victim).

**91.** *See e.g. Charm v. State*, 924 P.2d 754, 763 (Okl.Cr.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997) (finding criminal activity occurring after murder sufficient to support continuing threat); *Allen*, 923 P.2d at 621 (supporting continuing threat was prior convictions for pointing weapon, history of violent arguments with wife and girlfriend, and attempt to kill police officer after killing victim).

**92.** 876 P.2d at 717.

**93.** 893 P.2d 521, 536 (Okl.Cr.1995).

To establish 'continuing threat' the State must show 'a pattern of criminal conduct that will likely continue in the future.' The facts of the crime in this case simply do not demonstrate such a pattern of criminal behavior." [94] Here, the State proved that Ochoa engaged in a single act of violence and it showed that Ochoa belonged to a street gang. While the murders of Yanez and Morales were deplorable, the State has presented insufficient evidence to show a pattern of criminal conduct that will likely continue in the future. Absent this proof, we cannot say that Ochoa poses a continuing threat to society.

¶ 65 Having found that the State failed to prove the continuing threat aggravating circumstance, "this Court has the authority to reweigh any remaining aggravating circumstances against the mitigating evidence to determine the validity of the death sentence." [95] This brings us to Proposition XIV in which Ochoa argues that the evidence is insufficient to support the second aggravating circumstance that Ochoa created a great risk of death to more than one person. We disagree. Ochoa and Torres killed two people. Under our case law, the killing of two people is sufficient to satisfy this aggravating circumstance.[96] Accordingly, we find the evidence sufficient to sustain this aggravating circumstance.

¶ 66 We now must weigh the mitigating evidence against the remaining aggravating circumstance and determine whether to sustain Ochoa's death sentence. In mitigation, Ochoa offered his youth at the time of the crime, his lack of a criminal record, his personal history, his problems with drugs and alcohol, evidence showing he would function well in a structured prison setting, and expert testimony regarding his mental illness, his mental illness history and his borderline mental retardation. He also presented evidence of his family's love for him and pleas of mercy. While Ochoa's evidence had compelling aspects, we find, on balance that the aggravating evidence of the murder of two people outweighs the mitigating evidence. Accordingly, we sustain Ochoa's death sentence.

¶ 67 In Proposition XV, Ochoa argues that the victim impact evidence presented in this case was improper. This Court spelled out the parameters of victim-impact evidence in *Cargle v. State*.[97] As required by *Cargle*, the trial court held a hearing before the victim-impact evidence was introduced. Moreover, the testimony of the victim-impact witnesses comported with the guidelines set out in *Cargle*. The trial court complied with *Cargle*, and there was no error.

¶ 68 Ochoa contends in his sixteenth proposition that the trial court erred in failing to give second stage instructions that would focus the jury's attention on the individual culpability of each defendant. Specifically, he states that the trial court should have given an *Enmund/Tison*[98] instruction. However, in *Cannon v. State*,[99] this Court found that an *Enmund/Tison* instruction is not required in the second stage of a malice murder case where the jury has been instructed properly during the first stage of trial on aiding and abetting and the elements of first degree malice murder. *Cannon* controls here. In the first stage of trial, Ochoa's jury was properly instructed on the elements of first degree malice murder and on aiding and abetting. In accordance with *Cannon*, we find that the trial court did not err in declining to give an *Enmund/Ti-*

**94.** *Id.* at 536. *See Cudjo v. State*, 925 P.2d 895, 902 (Okl.Cr.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 981, 136 L.Ed.2d 863 (1997) (finding "Appellant's criminal history does not support the finding of this aggravating circumstance. Although Appellant had admittedly burglarized the grocery store on prior occasions, these unadjudicated burglaries appear to have amounted to nothing more than petty thefts.").

**95.** *Malone*, 876 P.2d at 718.

**96.** *Hooker*, 887 P.2d at 1364.

**97.** 909 P.2d 806, 828 (Okl.Cr.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996).

**98.** *See Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

**99.** 904 P.2d at 104–05.

*son* instruction in the second stage of Ochoa's trial.

■ ¶ 69 In Proposition XVII, Ochoa argues that the trial court's refusal to define life without the possibility of parole to the jury was error. To the contrary, the trial court's actions are consistent with the decisions of this Court.[100] Relief is not warranted.

¶ 70 In another attack on the second stage jury instructions, Ochoa argues in Proposition XVIII that the trial court's modification of Ochoa's requested instructions on mitigating evidence was improper. Ochoa's requested instructions on second stage mitigating evidence listed twenty-four mitigating factors for the jury to consider in the second stage of trial. The trial court modified this list and provided the jury with an instruction containing fifteen mitigating factors. The trial court modified the list because the evidence did not support all twenty-four mitigating factors requested by the defendant. Defense counsel did not object to the modification.

■ ¶ 71 A defendant must be permitted to present all relevant mitigating evidence in support of his plea for a sentence less than death.[101] It is clear that Ochoa had an opportunity and did indeed present such mitigating evidence. The court's instructions adequately reflected the mitigating evidence in this case and the trial court did not abuse its discretion in modifying Ochoa's requested instruction. Error did not occur.

¶ 72 In Proposition XIX, Ochoa contends the mitigating evidence outweighs the aggravating evidence. We have previously considered this issue and found that the risk of death to more than one person outweighed the mitigating evidence. This proposition is denied.

¶ 73 Ochoa raises a number of claims in his twenty-first proposition which are repeatedly raised in death penalty cases and repeatedly denied. These claims are: (1) the jury instructions failed to inform the jury the findings for mitigation do not have to be unanimous;[102] (2) the mitigating instructions were defective;[103] (3) the trial court failed to tell jurors they could consider life or life without parole even if they found an aggravating circumstance;[104] (4) the weighing instructions were improper;[105] (5) Oklahoma's death penalty is unconstitutional;[106] (6) the jury's special findings of fact in the second stage of trial were unconstitutional;[107] (7) the trial court refused to allow evidence on cost effectiveness;[108] (8) the trial court refused to instruct the jury on the presumption of life;[109] (9) the trial court denied Ochoa the right of allocution;[110] and (10) the prosecutorial charging discretion is unconstitutional.[111]

---

**100.** *Johnson,* 928 P.2d at 319. I disagree with the Court's position on instructing the jury on the definition of the sentence of life without the possibility of parole. We repeatedly see cases where such an instruction is necessary. Nonetheless, I am bound by the doctrine of stare decisis to deny relief on this basis.

**101.** *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

**102.** The Court rejected this claim in *Charm,* 924 P.2d at 773 n. 57.

**103.** *Id.*

**104.** The Court rejected this argument in *Harjo v. State,* 882 P.2d 1067, 1081 (Okl.Cr.1994), *cert. denied,* 514 U.S. 1131, 115 S.Ct. 2007, 131 L.Ed.2d 1007 (1995).

**105.** The Court rejected this argument in *Duckett,* 919 P.2d at 22.

**106.** The Court has held Oklahoma's death penalty is constitutional. *Hamilton,* 937 P.2d at 1013.

**107.** The Court has rejected this argument. *Duckett,* 919 P.2d at 27.

**108.** The Court has found that it is not error to refuse to allow evidence on the cost effectiveness of the death penalty. *Smallwood v. State,* 907 P.2d 217, 233 (Okl.Cr.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996).

**109.** The Court does not require courts to give an instruction on the presumption of life. *Duckett,* 919 P.2d at 22.

**110.** The Court does not require that courts grant the defendant the opportunity to make a personal plea of mercy to the jury. *Id.* at 20–22.

**111.** The Court has rejected similar claims on abuse of prosecutorial charging discretion. *Hooker,* 887 P.2d at 1367–68.

Each of these issues has been raised in previous death penalty cases and rejected by the Court. We once again decline to grant relief on any of these issues.

¶ 74 In Proposition XXII, Ochoa argues that the accumulation of errors in this case warrants reversal of Ochoa's conviction and sentence. We disagree and find that the accumulation of errors is not sufficient to grant relief.

■■■ ¶ 75 In Proposition XXIII, Ochoa argues that the imposition of the death sentence upon him violates the constitution. We find that the application of Oklahoma's capital sentencing scheme to Ochoa is not unconstitutional.[112]

¶ 76 In his final proposition of error, Ochoa argues that this Court should modify Ochoa's sentence under this Court's power to conduct an independent mandatory sentence review.[113] We find that the imposition of the death sentence was not the result of passion, prejudice or any other arbitrary factor. We decline to modify Ochoa's sentence.

## MANDATORY SENTENCE REVIEW

¶ 77 In accordance with 21 O.S.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances. Upon review of the record, we cannot say the sentence of death was imposed because the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.1991, § 701.13(C). The jury found the existence of two aggravating circumstances: (1) continuing threat and (2) risk of death to more than one person. We found the evidence insufficient to support the continuing threat aggravating circumstance, but found the evidence sufficient to support the risk of death to more than one person. Accordingly, the Court reweighed the mitigating and aggravating circumstances. Ochoa's mitigating evidence included: (1) Ochoa's youth at the time of the crime, (2) his lack of a criminal record, (3) his personal history, (4) his problems with drugs and alcohol, (5) evidence showing he would function well in a structured prison setting, (6) expert testimony regarding his mental illness, his mental illness history and his borderline mental retardation, and (7) his family's love for him. After reweighing the evidence, we sustained Ochoa's death sentence. Finding no other error warranting modification, the judgment and sentence of Oklahoma County District Court is **AFFIRMED**.

JOHNSON, J., concurs.

STRUBHAR, V.P.J., and LUMPKIN and LANE, JJ., concur in results.

STRUBHAR, Vice Presiding Judge: concurs in results.

¶ 1 I concur in results by reason of *stare decisis*. I maintain my disagreement with the majority and continue to agree with Judge Chapel as reflected in footnote 99. I believe that a jury should be informed on the definition of the sentence of life without the possibility of parole whenever the jury so asks for clarification.

LUMPKIN, Judge: concurs in results.

¶ 1 I concur in the results reached by the Court, however I cannot join in some of the verbiage used or unsupported conclusionary statements.

¶ 2 In it's discussion of Proposition II, the Court fails to recognize that Ochoa's access to the crime scene prior to the second trial was due to an accommodation by the State. The Court recognizes that third parties occupied the home at that time and had denied Appellant's investigators access. The trial court recognized it did not have authority to direct the third parties to allow the defense investigators into the house. Somehow the State was able to secure permission to return to the house to take measurements and prepare a new diagram. While I agree

---

**112.** *See Thompson v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988); *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

**113.** 21 O.S.1991, § 701.13(C).

it would have been more prudent for the State to allow the defense investigators for Ochoa the opportunity to confirm the new measurements, it was not error.

¶ 3 The Court's discussion of Appellant's role as an aider and abettor seems to disregard our unanimous decision on that issue in *Conover v. State*, 933 P.2d 904, 914–16 (Okl. Cr.1997). Regretfully, the issue raised here is a product of one of the "potential 'time bombs'" I referred to in my separate writing in *Johnson v. State*, 928 P.2d 309, 321–22 (Okl.Cr.1996) (Lumpkin, J. Concurring in Result). Using the standard set out in *Conover,* I find the evidence sufficient to support the verdict in this case. The Court should follow our jurisprudence and not try to confuse it.

¶ 4 The concept of "de novo" review enunciated by the Court at Paragraph 8 [Page 591] is not a part of our jurisprudence. In fact, the case cited by the Court in support of that concept, *Smith v. State*, 932 P.2d 521, 528 (Okl.Cr.1996), does not address that issue. However, I agree with the Court's conclusion that regardless of how low the standard is, Appellant did not present sufficient evidence to show he was incompetent at the time of trial.

¶ 5 I also find the facts relating to the aggravator that Appellant knowingly created a great risk of death to more than one person more compelling than related in the opinion. Appellant and his co-defendant, armed with firearms, entered the home of the victims, in a residential neighborhood, in the early morning hours of July 12, 1993. The front door of the residence was kicked in and the victims gunned down in their bedroom. Three children, ages six (6), eleven (11) and fourteen (14) years were in the house. Fortunately, those children did not run into the hallway. One child called 911 and asked for help. She looked out of her bedroom and saw two men, one she later identified as Appellant. Her stepbrother hid under his bed when he heard the shots. He later testified he saw a man shoot his father as he watched from under the bed. Not only does the murder of the two victims support the aggravator, but also the risk of death to the others who were in the home. This evidence relating to the aggravator not only substanti-ates the death penalty but also clearly outweighs the evidence presented in mitigation. I therefore concur in the result reached by the Court.