**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 1, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GEORGE OCHOA,

       Petitioner - Appellant,

v.

RANDALL G. WORKMAN, Warden,
Oklahoma State Penitentiary,

       Respondent - Appellee.

No. 02-6032
(D.C. No. CIV-99-538-R)
W.D. Oklahoma

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

An Oklahoma state jury found George Ochoa guilty of, *inter alia,* two counts of first degree murder and sentenced him to death. On direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed. *Ochoa v. State*, 963 P.2d 583, 606 (Okla. Crim. App. 1998). After exhausting his Oklahoma state post-conviction remedies, Ochoa filed a 28 U.S.C. § 2254 habeas corpus petition in federal district court. The district court denied habeas relief in an extensive

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

order.  Ochoa appeals the district court's denial of habeas relief (No. 02-6032).[1]

Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, this court

**affirms** the district court's denial of Ochoa's habeas petition.

## I. BACKGROUND

The following factual background is taken from the opinion of the OCCA

on direct appeal.  Additional background, both factual and procedural, is set out

below where necessary to understand individual issues raised by Ochoa on appeal.

> During the early morning hours of July 12, 1993, Francisco
> Morales and his wife, Maria Yanez, were shot and killed in the
> bedroom of their Oklahoma City home.  The sound of gunfire woke
> Yanez's daughter Christina, who was 14 years old in the summer of
> 1993.  Christina called 911 and told the operator that she believed
> her step-father, Morales, may have been firing the gun.  After
> hanging up the telephone, she looked out her bedroom door.  A light
> was on in the living room; Christina saw two men.  One man was
> wearing a white t-shirt and the other man was wearing a black t-shirt.
> Christina stated the man in the black t-shirt had something in his

---

[1]After all briefing was complete and Ochoa's appeal was set for oral argument, this court stayed the appeal, upon Ochoa's motion, so he could exhaust an *Atkins*-based mental retardation claim in state court.  *See Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding that the Eighth Amendment "places a substantive restriction on the State's power to take the life of a mentally retarded offender" (quotation omitted)).  Oklahoma held a jury trial on Ochoa's *Atkins* claim; the jury concluded Ochoa had not proved he was mentally retarded by a preponderance of the evidence.  The OCCA affirmed.  *Ochoa v. State*, 136 P.3d 661, 670 (Okla. Crim. App. 2006).  This court then granted Ochoa permission to file a second § 2254 petition raising his *Atkins* claim in federal district court.  *Ochoa v. Sirmons*, 485 F.3d 538 (10th Cir. 2007).  After the district court denied habeas relief, Ochoa appealed to this court.  Ochoa's appeal of the denial of his *Atkins*-based successive habeas petition remains pending before this court (No. 10-6088).

hand, but she did not know what it was. Christina initially denied knowing the two men, but eventually identified Ochoa as the man in the black t-shirt and [Osbaldo] Torres as the man in the white t-shirt.

The shooting also awakened Christina's step-brother, Francisco, who was eleven years old in the summer of 1993. Francisco saw the man in the black t-shirt shoot his father. He could not identify the gunman.

The police quickly responded to Christina's 911 call. While en route to the Yanez/Morales home, Officer Coats arrested Torres and Ochoa, who were walking together a short distance from the homicide. The men were sweating and nervous, and Coats claimed he observed blood on the clothing of the men.

A short time before the shootings, Torres and Ochoa parked their car at a friend's house. A witness observed one of the men take a gun from the trunk of the car and put the gun in his pants. This gun was different from the gun used in the murders. The witness stated one of the men was Ochoa. She could not identify the other man, but asserted that it was the other man—and not Ochoa—who put the gun in his pants. Another witness testified that the man with Ochoa was Torres.

The jury convicted Ochoa and Torres on all counts and the case proceeded to the capital sentencing phase of trial. The State argued that Ochoa and Torres posed a continuing threat to society based on the circumstances of the murders and the defendants' membership in the Southside Locos, a local gang. To show that Ochoa created a risk of death to more than one person, the State offered the death of the two victims and the presence of three children in the home at the time of the murders. The defense presented in mitigation Ochoa's personal history, his history of mental illness, his borderline mental retardation and pleas of mercy from his family. The jury found the existence of both aggravating circumstances. After weighing the aggravating and mitigating evidence, the jury imposed the death penalty.

*Ochoa*, 963 P.2d at 590; *see also generally Torres v. Mullin*, 317 F.3d 1145 (10th Cir. 2003) (denying federal habeas relief to Ochoa's co-defendant).[2]

## II. STANDARD OF REVIEW

A petitioner is entitled to federal habeas relief only if a state court's merits-based adjudication of his claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This court presumes a state court's factual findings are correct unless the petitioner rebuts that presumption by "clear and convincing evidence." *Id.* § 2254(e)(1).

This court first determines "whether the principle of federal law upon which petitioner relies was clearly established by the Supreme Court at the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). Clearly established law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *Id.* at 1018. If clearly established

---

[2]"George Ochoa was tried jointly with Osbaldo Torres by a jury in Oklahoma County District Court, No. CF-93-4302." *Ochoa v. State*, 963 P.2d 583, 589 (Okla Crim. App. 1998).

federal law exists, this court moves on to consider whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts . . . materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court." *Id.* (quotations omitted) (alterations in original). "A state court decision involves an 'unreasonable application' of federal law if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotation omitted). This court "may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *House*, 527 F.3d at 1029 (quotation omitted).

## III. DISCUSSION

On appeal, Ochoa asserts he is entitled to habeas relief based on each of the following five alleged constitutional errors: (1) admission of evidence about Ochoa's involvement in an Oklahoma City street gang rendered both the guilt and

penalty phases of his trial unfair; (2) multiple incidents of prosecutorial misconduct rendered both phases of his trial unfair; (3) the state trial court's refusal to instruct the jury to consider the relative degree of culpability of Ochoa and Torres in arriving at a sentencing decision rendered his death sentences unreliable; (4) admission of allegedly unreliable eyewitness identification evidence rendered his trial unfair; and (5) the trial court's refusal to specifically instruct the jury as to the meaning of "life without the possibility of parole" rendered his death sentences unreliable. As set out more fully below, the majority of Ochoa's claims for habeas relief are foreclosed by this court's decision affirming the denial of habeas relief to Ochoa's co-defendant. *See Torres*, 317 F.3d at 1148. Ochoa's remaining claims fail on the merits.

## A. Street-Gang Evidence

### 1. Guilt Phase

The basis of Ochoa's claim is set out as follows in the opinion of the OCCA:

> Ochoa complains the prosecution sought to introduce evidence of Ochoa's gang affiliation during the first stage of trial. Although the trial court ruled that such evidence was inadmissible during first stage, the prosecution elicited from Officer Tays that the suspects—Ochoa and Torres—might be gang members. There was no objection to this testimony. On four occasions during closing argument, the prosecution referred to the defendants, either directly or indirectly, as gang members. Defense objected to two of the comments on the grounds that the statement was not in evidence; the objections were overruled. We review these claims for plain error and we are troubled that the prosecution attempted to deliberately

inject gang evidence into the first stage of trial. Not only did the evidence and comments regarding Ochoa's gang membership violate the trial court's order, but also such evidence was irrelevant to the question of guilt or innocence as the gang evidence was in no way connected to the Yanez/Morales' murders. While we find the use of gang evidence in the first stage of trial to be error, Ochoa has failed to show that the error was sufficiently prejudicial. Accordingly, relief is denied.

*Ochoa*, 963 P.2d at 597.

This claim of misconduct is foreclosed by this court's decision in *Torres*, 317 F.3d at 1158-59 (noting claim by Torres that prosecutors improperly alluded to alleged gang affiliation but rejecting claim on the ground that all of prosecutor's allegedly improper comments taken together did not render trial fundamentally unfair). This court has reviewed the brief Torres filed with this court in his appeal of the denial of his habeas petition. Torres's brief raises a claim that is in all material respects identical to the claim Ochoa is now raising regarding guilt-phase evidence of gang activity. Torres and Ochoa were tried jointly and the evidence against them appears to be equally strong. If anything the case against Ochoa is stronger because the prosecution's theory, supported by the evidence, is that Ochoa was the shooter. *Ochoa*, 963 P.2d at 599. Accordingly, this court's determination in *Torres* that the prosecution's gang-related statements during the guilt phase did not, in the context of the entire trial, render the trial fundamentally unfair, applies equally to Ochoa's identical claim. *See Torres*, 317 F.3d at 1158-59. In any event, at oral argument, Ochoa's counsel

conceded that the guilt-phase aspect of Ochoa's gang-related claim of prosecutorial misconduct is foreclosed by the decision in *Torres*. Thus, the district court properly denied this aspect of Ochoa's claim of habeas relief.

## 2. Penalty Phase

### a. Background

To fully understand the basis of Ochoa's claim for habeas relief flowing from the admission of evidence of gang affiliation during the penalty phase of his trial, it is helpful to set out at length the OCCA's resolution of this issue on direct appeal:

> Ochoa argues the trial court erred in allowing evidence of his gang affiliation to be introduced to prove continuing threat. . . . [He further] argues the evidence was insufficient to support the jury's finding that he posed a continuing threat to society. These two propositions are closely related, and we consider them together.
>
> Oklahoma provides that the death penalty may be considered an appropriate punishment for first degree murder only in certain specific cases, which are narrowly defined by statutory aggravating circumstances. At issue here is the continuing threat aggravating circumstance which Oklahoma defines as the "existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." To prove this aggravating circumstance, the State relied on (1) the facts of the crime itself, and (2) Ochoa's affiliation with the Southside Locos, a local gang.
>
> . . . Ochoa argues that admission of the gang evidence violated the First and Fourteenth Amendments of the federal constitution and violated the Supreme Court's ruling in *Dawson v. Delaware*, 503 U.S. 159 (1992). In his majority opinion in *Dawson*, Chief Justice Rehnquist held that "the First and Fourteenth Amendments prohibit the introduction in a capital sentencing proceeding of the fact that the

-8-

defendant was a member of an organization called the Aryan Brotherhood, where the evidence has no relevance to the issues being decided in the proceeding." Although the Court recognized "the First Amendment protects an individual's right to join groups and associate with others holding similar beliefs," the Court rejected Dawson's claim that evidence of his membership in the Aryan Brotherhood was per se invalid.

In finding evidence of Dawson's membership in the Aryan Brotherhood to be improper, the Court appears to have been particularly struck by two facts: (1) the Aryan Brotherhood evidence was not connected to the murder of Dawson's victim, who was white; and (2) the prosecution failed to prove that the Aryan Brotherhood was involved in any criminal activity. Rather, at issue in *Dawson* was simply the following stipulation: "'The Aryan Brotherhood refers to a white racist prison gang that began in the 1960's in California in response to other gangs of racial minorities. Separate gangs calling themselves the Aryan Brotherhood now exist in many state prisons including Delaware.'" Without any other evidence of criminal activity, Dawson's membership in the Aryan Brotherhood simply showed he was a racist and/or a member of a racist organization, and that alone is not proper evidence. Nonetheless, the Court did not close the door to all evidence relating to a defendant's associations. The Court noted, "In many cases, for example, associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society. A defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future."

The issue before us is Ochoa's membership in the Southside Locos. In contrast to *Dawson*, here the State introduced not only evidence of Ochoa's membership in the gang, but also introduced evidence that the Southside Locos engaged in criminal activity ranging from graffiti to drug trafficking to murder. This type of membership in a criminal gang is the type of associational evidence that the Supreme Court viewed as relevant and permissible in *Dawson*. The problem here for the State is not the admissibility of the evidence itself, but the ultimate probative value of this evidence in this particular case.

The evidence of Ochoa's membership in or affiliation with the Southside Locos is, at best, of marginal value. There is no evidence that the murders of Maria Yanez or Francisco Morales were in any way connected to the gang or committed on behalf of or to earn status in the gang. Indeed, the State in its brief explicitly states, "No motive was ever discerned for the crime and it appears the Morales' home may have been picked at random." Further, although the State introduced evidence that the Southside Locos engaged in a variety of criminal activities, the State utterly failed to tie Ochoa to these criminal activities. There is absolutely no evidence that Ochoa ever engaged in any kind of criminal activity connected with the Southside Locos. The only evidence of Ochoa's affiliation with the gang is that Ochoa told a police officer that he was a member of the Southside Locos and he sported a tattoo of a "cholo," which is a purported symbol of gang membership. The State offered nothing else to show the nature, extent or value of Ochoa's relationship with the gang. Such lack of connection between the gang's criminal activity and Ochoa makes this evidence, while admissible, of very marginal value as to the question of whether Ochoa himself poses a continuing threat to society. The marginal quality of this evidence thus begs the next question: is the evidence sufficient to support the continuing threat aggravating circumstance. The answer is no.

As stated above, the State not only failed to show that Ochoa engaged in any criminal gang activity, but also the State failed to show that Ochoa ever committed any crime. Ochoa had no prior criminal record and he had no prior unadjudicated offenses. There was no evidence that since the murders Ochoa had engaged in any violent or illegal activities. This lack of evidence of criminal activity on the part of Ochoa stands in marked contrast with the requirement "that the State present sufficient evidence concerning prior convictions or unadjudicated crimes to show a pattern of criminal conduct that will likely continue in the future to support its 'continuing threat' contention." The State utterly failed to make such a showing here.

In other cases in which this Court has found the evidence sufficient to support the continuing threat aggravating circumstance, the State has introduced evidence of prior criminal acts of violence, prior unadjudicated offenses, or evidence of criminal activity occurring after the crime. We have none of that here. . . . The facts

-10-

of the crime in this case simply do not demonstrate . . . a pattern of criminal behavior. Here, the State proved that Ochoa engaged in a single act of violence and it showed that Ochoa belonged to a street gang. While the murders of Yanez and Morales were deplorable, the State has presented insufficient evidence to show a pattern of criminal conduct that will likely continue in the future. Absent this proof, we cannot say that Ochoa poses a continuing threat to society.

Having found that the State failed to prove the continuing threat aggravating circumstance, "this Court has the authority to reweigh any remaining aggravating circumstances against the mitigating evidence to determine the validity of the death sentence." . . . .

. . . In mitigation, Ochoa offered his youth at the time of the crime, his lack of a criminal record, his personal history, his problems with drugs and alcohol, evidence showing he would function well in a structured prison setting, and expert testimony regarding his mental illness, his mental illness history and his borderline mental retardation. He also presented evidence of his family's love for him and pleas of mercy. While Ochoa's evidence had compelling aspects, we find, on balance that the aggravating evidence of the murder of two people outweighs the mitigating evidence. Accordingly, we sustain Ochoa's death sentence.

*Ochoa*, 963 P.3d at 601-04 (footnotes omitted).

In his habeas petition, Ochoa asserted he suffered actual prejudice as a result of the admission during the penalty phase of irrelevant and unconstitutional evidence concerning gang affiliation. He further alleged that the OCCA's reweighing was so terse as to be constitutionally inadequate. The district court rejected both contentions. As to Ochoa's claim of actual prejudice flowing from the admission of the gang evidence, the district court rejected the claim on two independent grounds: (1) when it set aside the continuing threat aggravator and

engaged in reweighing, the OCCA eliminated any possibility of prejudice flowing from the admission of gang evidence; and (2) the admission of gang evidence did not render the penalty phase of Ochoa's trial so fundamentally unfair as to deny him due process. As to Ochoa's claim the OCCA's reweighing was constitutionally insufficient, the district court noted the OCCA had actually reweighed Ochoa's mitigating evidence against the sole remaining aggravator and, consistent with the record, properly determined the death sentence remained appropriate.

### b. Admission of Gang Evidence

Ochoa's claim comes before this court in an unusual posture. Ochoa proceeds based on an apparent assumption that the admission of gang-related evidence during the penalty phase was error and simply argues the matter of prejudice. The OCCA, however, ruled that the evidence was relevant and admissible under the Supreme Court's decision in *Dawson*. *Ochoa*, 963 P.2d at 602. Only after having concluded the evidence was properly admitted did the OCCA turn to the analytically distinct question of whether that evidence was sufficient to support the continuing threat aggravator. *Id.* at 602-03. At no point in his brief to this court does Ochoa argue the decision of the OCCA—that the gang-related evidence adduced by the prosecution during the penalty phase was admissible—is "contrary to" or an "unreasonable application of" clearly established Supreme Court precedent. 28 U.S.C. § 2254. This alone is sufficient

-12-

to conclude Ochoa's habeas claim relating to admission of gang-related evidence during the penalty phase fails.

Even if this court were to assume the admission of gang-related evidence during the penalty phase implicated Ochoa's right to a fundamentally fair trial, the record in this case makes it clear he suffered no prejudice as a result of the admission of the evidence. The OCCA's conclusion that the continuing threat aggravator was not supported by sufficient evidence, together with its conclusion after reweighing that the death penalty was still warranted, wrung out of the sentencing phase any possible prejudice flowing from the second-stage gang evidence. *See Ochoa*, 963 P.2d at 604. That is, during the process of reweighing, the OCCA entirely discounted the continuing threat aggravator and the insufficient evidence the prosecution adduced in support of it at trial. *Id.* Having done so, it considered only whether the sole remaining aggravator—that Ochoa's conduct created a risk of death to more than one person—outweighed the mitigation evidence adduced by Ochoa. *Id.* Thus, this court can conclude with absolute confidence that the admission of gang-related evidence during the penalty phase of Ochoa's trial had no impact on the ultimate outcome of the trial.

### c. Reweighing

Although Ochoa recognizes state courts can engage in appellate reweighing after invalidating an aggravating circumstance, he asserts the OCCA decision is too terse and generalized to be constitutionally adequate. In support of this

contention, Ochoa relies on *Stringer v. Black*, 503 U.S. 222 (1992).[3]  In response,

Oklahoma argues this claim is procedurally barred and, in any event, fails on the

merits.

This court need not decide whether this claim is procedurally barred

because it clearly fails on the merits.  28 U.S.C. § 2254(b)(2) (providing that a

habeas petition may be denied on the merits "notwithstanding the failure of an

applicant to exhaust" his state court remedies).  The Supreme Court has made

clear that it has never specified "the degree of clarity with which a state appellate

court must reweigh in order to cure an otherwise invalid death sentence."

*Richmond v. Lewis*, 506 U.S. 40, 48 (1992).  This lack of specificity has led

appellate courts to reject claims similar to Ochoa's, even before the advent of the

---

[3]In particular, Ochoa relies on the following passage from *Black*:

> [W]e have not suggested that the Eighth Amendment permits the
> state appellate court in a weighing State to affirm a death sentence
> without a thorough analysis of the role an invalid aggravating factor
> played in the sentencing process.
>
> We require close appellate scrutiny of the import and effect of
> invalid aggravating factors to implement the well-established Eighth
> Amendment requirement of individualized sentencing determinations
> in death penalty cases.  In order for a state appellate court to affirm a
> death sentence after the sentencer was instructed to consider an
> invalid factor, the court must determine what the sentencer would
> have done absent the factor.  Otherwise, the defendant is deprived of
> the precision that individualized consideration demands under [our]
> cases.

*Stringer v. Black*, 503 U.S. 222, 230-31 (1992).

AEDPA's heightened standard. *See, e.g., Jeffers v. Lewis*, 38 F.3d 411, 414-15

(9th Cir. 1994). Because there is no clearly established Supreme Court precedent

on this issue, Ochoa's claim necessarily fails. *House*, 527 F.3d at 1018.[4]

---

[4]In a supplement to his original brief, Ochoa asserts he is entitled to habeas relief pursuant to the Supreme Court's decision in *Brown v. Sanders*, 546 U.S. 212 (2006). The decision in *Brown*, however, does not relate in any way to the issues raised before the district court in Ochoa's habeas petition. Instead, it announced a new rule applicable to non-weighing death penalty states:

> We think it will clarify the analysis, and simplify the sentence-invalidating factors we have hitherto applied to non-weighing States . . . if we are henceforth guided by the following rule: An invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process unless one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances.

*Id.* at 220. Ochoa argues that even though Oklahoma is a weighing state, *Mullett v. Mullin*, 348 F.3d 902, 918-19 (10th Cir. 2003), he should receive the benefit of the rule announced in *Brown*. Generally, this court will not consider an issue raised for the first time on appeal. *Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999). Ochoa has offered no reason for this court to deviate from this well-established rule. In any event, the Supreme Court made clear in *Brown* that the rule announced therein did not prevent state appellate courts from engaging in reweighing. 546 U.S. at 217 ("In a weighing State, therefore, the sentencer's consideration of an invalid eligibility factor necessarily skewed its balancing of aggravators with mitigators and required reversal of the sentence (unless a state appellate court determined the error was harmless or reweighed the mitigating evidence against the valid aggravating factors." (citations omitted)); *see also Wilson v. Mitchell*, 498 F.3d 491, 507 (6th Cir. 2007) (noting the decision in *Brown* "leaves intact the Court's prior jurisprudence regarding weighing states"). Furthermore, *Brown* issued long after the OCCA decided Ochoa's direct appeal. Thus, it was not clearly established for purposes of § 2254(d). *Gilson v. Sirmons*, 520 F.3d 1196, 1220 (10th Cir. 2008).

### 3. Ex Parte Contacts

#### a. Background

After trial, an investigator working on Ochoa's behalf interviewed several jurors. According to the investigator, the jury foreman had conversations with the trial judge about security issues relating to the presence of gang-member defendants and gang members in the courtroom during the jury proceedings. In resolving this claim on post-conviction review, the OCCA first noted there was no indication in the investigator's affidavit that the conversation took place during deliberations. Furthermore, the OCCA concluded the security questions were more akin to housekeeping matters not material to guilt or innocence and, therefore, Ochoa was not prejudiced by not being present during the discussion.

Accompanying his § 2254 petition, Ochoa filed a substantially more detailed affidavit. In summary, the investigator averred that the jury foreman: (1) noted significant anxiety on the part of the jury flowing from the defendants' gang membership, (2) learned the defendants were gang members from the arguments of the prosecutors; (3) personally requested extra protection from the trial judge; and (4) indicated the jury imposed the death penalty because Ochoa was a gang member and gang members could not be rehabilitated. Based on the investigator's affidavit, the district court ordered the deposition of both the jury foreman and the trial judge. Those depositions did not bear out the allegations in the investigator's affidavit. In fact, the district court was chagrined by the

differences in the affidavit and the deposition testimony. Dist. Ct. Order at 10 ("The investigator's attestations are disturbing when compared with the deposition testimony of [the jury foreman] and [trial judge]."). The depositions revealed that if there was any kind of ex parte contact between the jury and a member of the trial court staff, a doubtful proposition, it was nothing more than a chat with the judge's clerk or secretary about safety concerns. Because the bulk of the investigator's affidavit contained material inadmissible under Fed. R. Evid. 606(b) (disallowing testimony about jury's thought processes) and the remainder was hearsay that the district court deemed incredible, the district court declined to rely in any way on the investigator's affidavit. Accordingly, in resolving this claim, the district court concluded it would only consider that the jury became concerned regarding their safety due to the presence of young men in the courtroom gallery and that the jury foreman expressed this concern to one of the judge's staff—without knowledge of the trial judge—during or after first stage jury deliberations began.[5]

With the factual background established, the district court moved on to consider whether the jury foreman's brief contact with a member of the trial judge's staff had a "substantial and injurious effect" on the outcome of the trial. *See Crease v. McKune*, 189 F.3d 1188, 1192-93 (10th Cir. 1999) (applying this

---

[5]In so concluding, the district court recognized its assumption was contrary to the OCCA's factual determinations, but noted the testimony of the jury foreman was not available to the OCCA.

standard in a similar factual context). With that standard in mind, the district court denied relief. It noted the jury foreman had never received a response from the judge or his staff. Although the foreman remembered increased security later in the trial, the trial judge testified extra security was present throughout the trial. The substance of the discussion involved security and not jury deliberations. Finally, the jury foreman's difficulty recalling any specifics of the conversation, further convinced the district court it was not critical and did not have a substantial or injurious effect on the verdict or sentence.

### b. Analysis

On appeal, Ochoa argues the mere fact a meeting between the jury foreman and a member of the trial court's staff took place creates a "high probability that the ability of not only the jury foreman but the rest of the jury to weigh impartially the evidence presented during the proceedings was compromised to Ochoa's detriment." Relying on the Supreme Court's decision in *Remmer v. United States*, 347 U.S. 227 (1954), he further argues that such ex parte contacts give rise to a strong presumption of prejudice and a corresponding heavy burden on the government to rebut such presumption. Oklahoma counters by noting this claim was resolved by the OCCA in post-conviction proceedings. In those proceedings, the OCCA determined the communication did not occur during deliberations and were not on a matter material to the guilt or the penalty phase.

These matters of historical fact are presumed correct absent clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

There exists a substantial procedural impediment to granting Ochoa habeas relief on this claim, albeit one not discussed by any party: the factual basis of the claim Ochoa now raises is significantly different than the factual basis of the claim as presented to the OCCA on post-conviction review. Having failed to adequately develop the factual basis of the claim in state court, Ochoa is precluded from relying on the newly developed evidence to obtain habeas relief. 28 U.S.C. § 2254(e)(2). More importantly, however, because this issue was adjudicated on the merits by the OCCA, Ochoa can obtain habeas relief only by satisfying the demanding requirements of § 2254(d). *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The analysis mandated under § 2254(d) is strictly focused on the factual record as it existed at the time of the OCCA's resolution of this claim. 28 U.S.C. § 2254(d)(2) (providing habeas relief may not be granted unless the petitioner demonstrates the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1400 (2011) (holding "that review under § 2254(d)(1) is [likewise] limited to the record that was before the state court that adjudicated the claim on the merits"). Because Ochoa has not even attempted to demonstrate that the decision of the OCCA, based on the factual record before it, was "contrary to,

-19-

or involved an unreasonable application of" clearly established Supreme Court precedent or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" to the OCCA, § 2254(d) mandates his habeas petition "shall not be granted with respect to" this particular claim. 28 U.S.C. § 2254(d); *Cullen*, 131 S. Ct. at 1398.[6]

## B. Prosecutorial Misconduct

### 1. Testimony of Maria Calderon

At trial, Maria Calderon testified that on the morning of the murders she saw an unidentified man accompanying Ochoa put a small gun in his belt.[7] While the case was on direct appeal, Calderon signed an affidavit stating she could not be sure the object she observed was a gun. According to the affidavit, Calderon

---

[6]Even if this court were to consider the evidence newly adduced during Ochoa's federal habeas proceedings, this court would still deny relief on the same grounds stated by the district court. The district court did not abuse its discretion in refusing to consider the affidavit of Ochoa's investigator in resolving the claim. All of the statements therein were hearsay and none of the deposition testimony of the jury foreman supports the allegations in the investigator's affidavit. For that reason, it was perfectly reasonable for the district court to rely exclusively on the actual testimony of the jury foreman and the trial judge in resolving the claim. Furthermore, since the only evidence adduced did not demonstrate any material issues of fact, it was appropriate for the district court to determine the question of prejudice on the basis of the undisputed facts. Based on the testimony of the jury foreman and trial judge, there is no reason to conclude whatever type of ex parte contact took place had a substantial and injurious effect on the outcome of the sentencing proceeding.

[7]To be clear, Calderon's testimony regarding the presence of a gun did not implicate either Torres or Ochoa in the murders. Calderon testified at trial that she was familiar with the gun used in the murders, a Tech-9, and that the gun she saw was not large enough and was not that make or model.

testified the object was a gun under pressure from prosecutors. When Ochoa attempted to raise the issue on appeal by asking the OCCA for a new trial, the OCCA concluded the request was untimely and the issue therefore waived. When Ochoa again raised the issue in his state petition for post-conviction relief, the OCCA again held, in an unpublished order, that the issue was waived: "Trial counsel knew about this issue as it was raised at the first trial. Appellate counsel also knew about this issue, but did not raise it in the direct appeal brief."

The district court concluded the matter was subject to a procedural bar. It further concluded Ochoa could not make the necessary showing of cause and prejudice to overcome the procedural bar. In particular, the district court noted Ochoa could not demonstrate prejudice. The only element of Calderon's testimony that was substantially changed was her testimony about the presence of a weapon during her observations of Torres and Ochoa. Because she had made clear during her testimony at trial that the weapon she observed could not have been the murder weapon, the district court resolved that her proposed change in testimony had only a negligible impact on the weight of the evidence against Ochoa.

This court's resolution of Torres's identical claim, which came before this court in a procedural posture identical to Ochoa's present claim, precludes the granting of relief to Ochoa:

As to the fourth instance of alleged misconduct—that the prosecution pressured a witness to testify falsely, we agree with the district court that the claim is procedurally barred. Mr. Torres' argument is based on an affidavit of Maria Calderon. The OCCA determined that the claims concerning Ms. Calderon could have been raised on direct appeal, but were not, and they did not support a conclusion that the outcome of the trial would have been different or that the defendant was factually innocent.

Our review of the record indicates that Ms. Calderon's affidavit was signed on April 10, 1997, during the pendency of Mr. Torres's direct appeal. Thus, the district court properly concluded that the claim arising out of Ms. Calderon's affidavit "could have been but was not raised on direct appeal." As a result, Mr. Torres is not entitled to raise this claim unless he can show either (a) cause for the procedural default and resulting prejudice or (b) that a fundamental miscarriage of justice will result if the court does not consider the claim. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).

We agree with the district court that Mr. Torres has failed to make this showing. In this regard, we recognize that Ms. Calderon's affidavit constitutes a modification of her trial testimony at the first and second trials that an unidentified individual she saw with Mr. Ochoa on the morning of the murders put a small gun in his belt. She now cannot identify the object. At both trials, however, Ms. Calderon's somewhat inconsistent testimony about the gun, its characteristics and the origins of that testimony were subject to adequate cross-examination and impeachment and the jury was left to sort it out. *See Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991).

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). Mr. Torres has failed to establish that the prosecutor knowingly presented false testimony at the second trial, let alone that the testimony was false. *See Van Woudenberg v. Gibson*, 211 F.3d 560, 569 (10th Cir. 2000); *Romano v. Gibson*, 239 F.3d 1156, 1175 (10th Cir. 2001). On the latter point, Ms. Calderon's affidavit does

not contradict the substantial remainder of her testimony, its corroboration, or the other facts of the crime. The gun in question was not the murder weapon. Mr. Torres accompanied Mr. Ochoa in breaking down a locked residential door at 2:40 a.m., while Mr. Ochoa was armed with a semiautomatic weapon. The victims were fired upon repeatedly. Rather than leaving promptly, Mr. Torres and Mr. Ochoa remained in the home, yet only a purse was taken. With or without the testimony about the precise nature of the object Mr. Torres placed in his belt, we conclude that Mr. Torres cannot demonstrate prejudice as there is no reasonable likelihood that the testimony on this comparatively small point could have affected the judgment of the jury when considered against the overwhelming evidence of guilt.

*Torres*, 317 F.3d at 1159 (footnotes omitted).

For the same reasons set out by this court in resolving Torres's appeal, Ochoa cannot demonstrate any prejudice relating to Calderon's testimony and thus cannot overcome his procedural default of this issue in state court. Accordingly, the district court correctly denied Ochoa habeas relief on this alleged ground of prosecutorial misconduct.

### 2. Allegedly Improper Comments

Ochoa sets out a catalog of allegedly improper comments on the part of prosecutors and asserts these comments, taken together, rendered both the guilt and penalty phases of his trial fundamentally unfair. As noted by both the district court and the OCCA, Ochoa never objected at trial to the bulk of these allegedly improper statements. On direct appeal, the OCCA concluded Ochoa "waived" his objections to most of the alleged improper statements by not raising them at trial. *Ochoa*, 963 P.2d at 600. As to the remaining improper statements, the OCCA

-23-

concluded they were harmless. *Id.* at 600-01. On habeas review, the district court recognized that in the normal case misconduct is only grounds for federal habeas relief if it deprived the petitioner of a fundamentally fair trial, an exceedingly high standard. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Ignoring the issue of procedural bar, and considering all allegedly improper comments in the aggregate, *Greer v. Miller*, 483 U.S. 756, 765-66 (1987), the district court concluded Ochoa was not deprived of a fundamentally fair trial.

The allegedly improper remarks fall into the following general categories:

**a. Comments by the prosecutor allegedly impacting Ochoa's presumption of innocence and right to remain silent.**

We begin by recognizing that this particular claim of prosecutorial misconduct is subject to a different standard because it amounts to an argument that the prosecutor's remarks deprived Ochoa of a specific constitutional right. *Torres*, 317 F.3d at 1158-59. "Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence or privilege against self-incrimination, a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." *Id.* at 1158. Nevertheless, this argument fails because *Torres* specifically held the prosecutors' comments at issue "did not so prejudice the presumption of innocence as to result

in a denial of that right" and "hardly resulted in a denial of the privilege against self incrimination." 317 F.3d at 1158-59.

### b. Additional comments on the part of prosecutors tying the murders to gang activity.

This argument fails because *Torres* held that the gang-related comments, even when considered along with all other allegedly improper comments "did not render . . . the trial fundamentally unfair." *Id.* at 1159.

### c. Comments tending to incite societal alarm, elicit sympathy for the victims, and indicate the prosecutors thought this was an appropriate case for the death penalty.

This argument fails because it too was rejected in *Torres*. *Id.* at 1158 (noting Torres's claim of prosecutorial misconduct centered around "various improper comments during the trial and in closing arguments"); *id.* at 1159 (concluding catalog of allegedly improper remarks, "[c]onsidered collectively and in the context of the trial as a whole," "did not render [the] trial fundamentally unfair").

### d. Comments demonizing Ochoa (i.e., referring to him as a murderer and killer) while vouching for a witness (i.e., pointing out one of the responding officers was the prosecutor's son).

For those reasons set out in the proceeding paragraph, this argument is foreclosed by this court's decision in *Torres*.

In concluding Ochoa's claim of prosecutorial misconduct is foreclosed by the decision in *Torres*, this court specifically reviewed the parties' briefs in

*Torres* to insure Ochoa's claim of prosecutorial misconduct was in all material respects identical to Torres's claim of misconduct. Because Torres's and Ochoa's claims of misconduct are indeed identical in all material respects, and because the trial record of these jointly tried co-defendants is also identical, *Torres* controls the disposition of Ochoa's claim of prosecutorial misconduct.

Even if this court were to assume, however, that minor differences in the presentation of Torres's and Ochoa's claims of misconduct allowed this court to evaluate Ochoa's claim unrestrained by the outcome in *Torres*, we would still affirm the district court's denial of habeas relief on this claim. Setting aside all issues of procedural bar and reviewing all allegedly improper prosecutorial comments in the context of the whole trial, it is absolutely clear the comments did not render Ochoa's trial fundamentally unfair. In particular, it is far from clear that all of the remarks identified by Ochoa are improper. At least some of the allegedly improper remarks amount to valid comments on the evidence presented at trial. *Ochoa*, 963 P.2d at 600 (holding some comments identified by Ochoa fell "within the broad parameters of effective advocacy and do not constitute error"). As to the remaining remarks, we simply note that, contrary to Ochoa's contentions, the evidence against him at both the guilt and penalty phases was sufficiently strong that this court is confident the improper comments had no real impact on the outcome of the trial. *Cf. Torres*, 317 F.3d at 1154-55 (noting evidence of Ochoa's intent to kill was much greater than evidence of Torres's

-26-

intent); *Torres*, 963 P.2d at 599 ("[T]he State's theory of the case was that Ochoa was the shooter and that Torres aided and abetted in the killings. The evidence supports this theory."). Furthermore, most of the improper remarks identified by Ochoa occurred during closing arguments. The jury was instructed, however, to decide the case only on the basis of the evidence produced by the prosecution and was instructed that "Evidence is the testimony received from the witnesses under oath, agreements as to fact made by attorneys, and the exhibits admitted into evidence during the trial." Considered within the context of the entire trial, this court has no doubt that the improper prosecutorial comments identified by Ochoa did not render his trial fundamentally unfair.

## C. Relative Culpability Instruction

Relying on the Supreme Court's decisions in *Enmund v. Florida*, 458 U.S. 782 (1982), and *Tison v. Arizona*, 481 U.S. 137 (1987), Ochoa contends the trial court's refusal to instruct the jury to consider the relative degree of culpability of himself and Torres in arriving at a sentencing decision violated the Eighth Amendment. The OCCA rejected this claim on the merits, determining the *Enmund/Tison* line of cases did not apply because Ochoa was convicted of committing malice murder. *Ochoa*, 963 P.2d at 604-05. Relying on that same basis, this court rejected an identical claim raised by Ochoa's co-defendant:

> Mr. Torres argues that his death sentence violates the Eighth Amendment because the trial court's instructions failed to direct the jury to give individualized consideration to Mr. Torres's involvement

in the homicides.  The Eighth Amendment does not permit imposition of a death sentence upon a defendant who did not "himself kill, attempt to kill, or intend that a killing take place or that lethal force be employed," [*Enmund*, 458 U.S. at 797], or unless that defendant was a major participant in the underlying felony and acted with a "reckless indifference to human life," [*Tison*, 481 U.S. at 158].  This case does not involve felony murder—the Oklahoma County District Attorney's Office dismissed the felony murder charges against Mr. Torres, and tried him on malice murder counts.  Having concluded that the jury instructions adequately instructed the jury on these counts, we must conclude that the OCCA's similar rejection of this Eighth Amendment claim was not an unreasonable application of federal law.

*Torres*, 317 F.3d at 1161.

The facts of Ochoa's case are in all relevant respects identical to the facts of Torres's case, i.e., in trying Ochoa, the prosecution proceeded solely on the basis of malice murder.  Furthermore, Ochoa does not assert any infirmities in the jury instructions regarding malice murder.[8]  Because the jury could not have convicted Ochoa of the murders without first finding he acted with intent to kill the victims, the *Enmund*/*Tison* line of cases simply does not apply.  *Id.* at 1157-58, 1161.  Accordingly, the district court properly denied Ochoa habeas relief on this ground.

---

[8]Even if Ochoa had challenged the propriety of the trial court's malice murder and aiding-and-abetting instructions, this court would be bound to reject such a challenge based on *Torres*'s conclusion that "the instructions when read reasonably and as a whole[] would [not] allow the jury to impute a finding of malice aforethought from one defendant to another."  *Torres*, 317 F.3d at 1158.

-28-

## D. Eyewitness Identification Evidence

### 1. Background

The most crucial evidence at trial was Christina Yanez's eyewitness testimony identifying Ochoa and Torres as the murderers. *Ochoa*, 963 P.3d at 596. On direct appeal to the OCCA, Ochoa asserted it was error to admit Yanez's in-court eyewitness identification because it was tainted by her observation of Ochoa in handcuffs at the crime scene. *Id.* He further asserted it was error to admit testimony by Officer Mullenix that Yanez had identified Ochoa as one of the killers during an interview at the police station shortly after the murders occurred. *Id.* The OCCA rejected both aspects of Ochoa's claim, concluding as follows:

> In his fourth proposition of error, Ochoa, for the first time, challenges the admissibility of Christina Yanez's identification of him and Torres. Since Ochoa did not lodge a contemporaneous objection to the evidence, relief will only be granted upon a showing that plain error occurred as a result of the admission of this evidence.
>
> Christina's identification of Ochoa and Torres was crucial to the State's case. Initially, she denied knowing the men who killed her parents. Christina admitted this initial denial explaining she made the initial denial because she was frightened. The initial denial does not render Christina's subsequent identification inadmissible; the evidence merely goes to the issue of credibility and reliability, which was a proper issue for the jury to decide.
>
> Ochoa next contends that Christina's subsequent identification of the men was tainted because Christina saw the men in handcuffs at the crime scene. The record does not support this contention. There is no testimony that Christina ever saw the defendants prior to telling Officer Mullenix at the police station that Ochoa was one of the men

she saw in her home that night. Ochoa points to testimony that, after their arrest, Ochoa and Torres were taken to the crime scene and held in handcuffs there for some time. It was possible for the Yanez/ Morales neighbors to see the defendants under arrest. However, there was no evidence that *Christina* saw the defendants or even knew they were there, and defense counsel never questioned Christina about this matter. Moreover, Officer Brett Macy testified that neither Christina nor her step-brother Francisco came into contact with the defendants at the crime scene. Based on this record, Ochoa has failed to show that there was a show-up identification and we cannot say that under the totality of the circumstances Christina's identification was tainted and/or unreliable. Accordingly, admission of her testimony and identification was proper.

Ochoa also alleges it was error for Detective Mullenix to testify that Christina identified Ochoa at the police station. Again Ochoa failed to lodge a contemporaneous objection and we review for plain error. This Court has stated "a witness, after making an in-court identification of the defendant, may testify that 'at a particular day, place, and time or times, [he or she] had occasion to see, recognize and identify the defendant as the person who committed the crime.'" However, "[o]nly the identifier may testify that an identification was made . . . . Testimony by a third party that an identification was made, or that a particular person was identified is . . . error." Nonetheless, "[w]hen such testimony follows an in-court identification of the accused by the identifier the error has been found to be harmless." Here, it was error for Mullenix to testify that Christina told him that one of the intruders was Ochoa. Nonetheless, the testimony was merely cumulative of Christina's testimony. The error is not prejudicial and relief is not warranted.

*Ochoa*, 963 P.2d 596-97 (footnotes omitted) (alterations in original).

As had the OCCA, the district court concluded, upon habeas review, that

Ochoa's claim as to Yanez's testimony failed because there was simply no

evidence in the record that Yanez had ever observed Ochoa at the crime scene.

Having concluded there was no error in the admission of Yanez's eyewitness

identification, the district court concluded the admission of Officer's Mullenix's testimony had not prejudiced Ochoa in any way.

### 2. Analysis

#### a. Yanez's In-Court Identification

As noted by both the OCCA and the district court, this claim fails for one obvious reason: Ochoa has never presented any evidence that Yanez saw him when he was brought to the crime scene. Recognizing this critical deficiency in his claim, Ochoa asserts in his reply brief that "Yanez never testified that she saw Ochoa in custody after the homicides; but, she was never asked." Accordingly Ochoa requests that this court remand this case for an evidentiary hearing on this issue so that he can attempt to establish that an unfairly suggestive show-up did, in fact, occur. Because Ochoa failed to establish the factual basis of this claim in state court, 28 U.S.C. § 2254(e)(2) precludes a federal habeas court from conducting an evidentiary hearing on the matter absent certain enumerated circumstances. Ochoa does not even attempt to argue his claim fits within the narrow enumerated circumstances set out in § 2254(e)(2). Thus, he is not entitled to an evidentiary hearing for the purpose of trying to establish Yanez observed him at the crime scene.

In any event, because this issue was adjudicated on the merits by the OCCA, Ochoa can obtain habeas relief only by satisfying the demanding requirements of § 2254(d). 28 U.S.C. § 2254(d)(2) (providing habeas relief may

-31-

not be granted unless the petitioner demonstrates the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"); *Cullen*, 131 S. Ct. at 1398-1400 (holding "that review under § 2254(d)(1) is [likewise] limited to the record that was before the state court that adjudicated the claim on the merits"). Because Ochoa has not attempted to demonstrate the decision of the OCCA, based on the factual record before it, was "contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" to it, § 2254(d) mandates his habeas petition "shall not be granted with respect to" this particular claim. 28 U.S.C. § 2254(d); *Cullen*, 131 S. Ct. at 1398.

### b.  Officer Mullenix's Testimony

Ochoa's claim regarding the testimony of Officer Mullenix fails for an equally fundamental reason: the evidentiary rule at issue is one of state law. Ochoa has not identified any provision of the United States Constitution that would prohibit Officer Mullenix from testifying Yanez identified Ochoa as her parents' killer shortly after the murders, given that Yanez herself was a trial witness. "Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir.1999).

-32-

Even assuming the issue is properly raised in federal habeas, Ochoa has failed to identify any meaningful prejudice flowing from Officer Mullenix's testimony. The entirety of Ochoa's briefing on the question of prejudice is the following: "[T]he error was prejudicial. No other evidence placed Ochoa at the scene. It cannot be said beyond a reasonable doubt that the inadmissible identification testimony 'did not contribute to the verdict obtained.' *Chapman v. California*, 386 U.S. 18, 24 (1967)." Merely asserting the existence of prejudice, however, is not enough. Ochoa must instead demonstrate, by reference to the record, exactly how he was prejudiced. As noted above, Christina's in-court identification was entirely proper. Furthermore, under the relevant state evidentiary rule, it would have been entirely proper for Christina to bolster her own in-court identification by reference to her earlier out-of-court identification, if her in-court identification would have been challenged on the basis now raised by Ochoa. *Ochoa*, 963 P.2d at 597. Given these facts, it is difficult to see how Officer Mullenix's testimony prejudiced Ochoa. Ochoa's citation of *Chapman* and his reference to a beyond-a-reasonable-doubt standard is inapt. The relevant question is whether this evidentiary error rendered Ochoa's trial fundamentally unfair, thereby amounting to a denial of due process. *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) ("We may not provide habeas corpus relief on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally

unfair that a denial of constitutional rights results." (quotations omitted)).  There is no doubt the answer to that question is no.

**E.  Instruction as to Meaning of Life Without the Possibility of Parole**

Prior to the submission of the penalty question to the jury, Ochoa requested that the trial court instruct the jury that life without the possibility of parole actually meant Ochoa would never be paroled.  The trial court refused to give the requested instruction, simply instructing the jury it had three sentencing options: death, life without the possibility of parole, and life with the possibility of parole. The OCCA concluded the trial court's instructions were proper and its refusal to further define the three possible types of punishment was consistent with state law.  *Ochoa*, 963 P.2d at 605.  The district court denied habeas relief on the merits, determining the decision of the OCCA was consistent with clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).

On appeal, Ochoa argues the trial court's refusal to specifically inform the jury that if he was sentenced to life without parole he would never be let out of prison is inconsistent with the Supreme Court's decisions in *Simmons v. South Carolina*, 512 U.S. 154 (1994), and *Shafer v. South Carolina*, 532 U.S. 36 (2001). In *Simmons*, the Supreme Court held that when a defendant's future dangerousness is at issue, and the only available alternative sentence to death is life imprisonment without possibility of parole, due process requires that the sentencing jury be told the defendant is parole ineligible.  512 U.S. at 156.  The

-34-

Court reasoned that consideration of a defendant's future dangerousness is affected by the possibility the defendant may be allowed to return to society. *Id.* at 168-69. The Court further noted that given the extant understanding in popular culture, the jury might assume any person not executed might at some point be paroled. *Id.* at 161. Similarly, in *Shafer* the Court held, because the jury was only given two sentencing options—life imprisonment or death—without being told the meaning of life imprisonment, the sentence must be reversed. 532 U.S. at 51.

This court has repeatedly rejected attempts to apply *Simmons*/*Shafer* to Oklahoma's three-option sentencing scheme, absent highly unusual circumstances not present in this case. *Welch v. Workman*, 639 F.3d 980, 1005 (10th Cir. 2011) (collecting cases). The false choice at issue in South Carolina simply does not come into play when the jury is told, as it was here, it has three distinct sentencing options and those options distinguish (on their face) between life imprisonment with and without the possibility of parole. *Id.* Ochoa's claim of constitutional error is foreclosed by this court's precedents.

## IV. CONCLUSION

For those reasons set out above, the order of the district court denying

Ochoa's § 2254 petition for habeas relief is hereby **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge