**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 3, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GEORGE OCHOA,

Petitioner - Appellant,

v.

ANITA TRAMMELL, Interim Warden,
Oklahoma State Penitentiary,

Respondent - Appellee.

No. 12-6310
(D.C. No. 5:12-CV-01313-R)
(W.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY***

Before **MURPHY**, **HARTZ**, and **HOLMES**, Circuit Judges.

George Ochoa, an Oklahoma prisoner sentenced to death in 1996, seeks a

certificate of appealability (COA) to appeal the district court's denial of a habeas

petition challenging his competency to be executed under *Ford v. Wainwright*,

477 U.S. 399 (1986), and *Panetti v. Quarterman*, 551 U.S. 930 (2007). He has also

moved for a stay of his execution, scheduled for December 4, 2012. We deny a

COA, dismiss the appeal, and deny a stay as moot.

---

* This order is not binding precedent except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

The details of Mr. Ochoa's crimes have been recited elsewhere, *see Ochoa v. State*, 963 P.2d 583 (Okla. Crim. App. 1998) (affirming conviction and sentence), and are not germane to this proceeding. He has unsuccessfully sought federal habeas relief in two prior petitions, the first raising numerous challenges to his conviction and sentence, *see Ochoa v. Gibson*, No. 5:99-cv-00538-R (W.D. Okla. Dec. 19, 2001), *aff'd*, *Ochoa v. Workman*, 451 F. App'x 718 (10th Cir. 2011), and the second challenging his death sentence under *Atkins v. Virginia*, 536 U.S. 304 (2002), on the basis that he is mentally retarded, *see Ochoa v. Sirmons*, No. 5:06-cv-01348-R (W.D. Okla. March 10, 2010), *aff'd*, *Ochoa v. Workman*, 669 F.3d 1130 (10th Cir. 2012), *cert. denied*, 133 S. Ct. 321 (2012). On October 10, 2012, following the denial of certiorari with respect to the second habeas petition, the Oklahoma Court of Criminal Appeals set Mr. Ochoa's execution for December 4, 2012.

On November 20, 2012, counsel for Mr. Ochoa sent a letter to interim Warden Trammell expressing concern about Mr. Ochoa's sanity. Counsel requested that the warden exercise her statutory authority to notify the district attorney that there was good reason to believe Mr. Ochoa is insane, triggering initiation of a jury proceeding to determine his competency to be executed under Okla. Stat. Ann. tit. 22, § 1005.[1]

---

[1]     Oklahoma Statute Title 22, § 1005, provides:

If, after his delivery to the warden for execution, there is good reason to believe that a defendant under judgment of death has become insane, the

(continued)

In support of this request, counsel attached a short report prepared by an investigator summarizing a recent meeting he and the investigator had with Mr. Ochoa, which recited some odd behavior by Mr. Ochoa.[2] He also attached Mr. Ochoa's prison mental health records for the past year, which likewise recounted some abnormal behavior but did not reflect any diagnoses or clinical impressions of insanity.[3] Counsel did not attach any expert opinion questioning Mr. Ochoa's sanity, despite the fact that he had recently secured a psychological examination of Mr. Ochoa.[4]

When the Warden did not respond, counsel sent another letter on November 27, 2012, inquiring how she intended to proceed. Counsel commenced this habeas proceeding the next day, before receiving the Warden's reply dated November 29, 2012. The Warden noted she had interviewed Mr. Ochoa on

---

warden must call such fact to the attention of the district attorney of the county in which the prison is situated, whose duty is to immediately file in the district or superior court of such county a petition stating the conviction and judgment and the fact that the defendant is believed to be insane and asking that the question of his sanity be inquired into. Thereupon, the court must at once cause to be summoned and impaneled from the regular jury list a jury of twelve persons to hear such inquiry.

[2]    Mr. Ochoa stated that he was being shocked all over his body throughout the day by some unnamed persons who appear to have some connection with at least one of the victims. He also indicated that he hears disembodied voices.

[3]    Mr. Ochoa had been observed beating on or kicking his toilet, which at times he claimed was the source of the shocks and voices.

[4]    Counsel states that Mr. Ochoa's odd and uncooperative behavior impeded the psychologist's efforts to gather data for an opinion on his mental condition. There is no explanation from counsel or, more importantly, the psychologist as to why a pertinent opinion could not have been provided on the basis of that very behavior.

- 3 -

November 29, 2012, and he had confirmed he understood he was to be executed for his crime of murder and understood the meaning of the execution. The Warden found no good reason to believe he had become insane and, hence, no basis to initiate proceedings under § 1005. At no point has Mr. Ochoa petitioned the state courts for a writ of mandamus to review the circumstances and direct the Warden to initiate competency proceedings, though precedent for just such judicial review was established earlier this year. *See Allen v. Workman*, No. 12-6253, 2012 WL 4947821 at *1-*2 (10th Cir. Oct. 18, 2012) (discussing state courts' mandamus review of warden's refusal to initiate competency proceedings in *Allen v. Workman*, No. MA-2012-307 (Okla. Crim. App. Apr. 10, 2012)), *cert. denied*, 2012 WL 5389147 (U.S. Nov. 6, 2012).

Mr. Ochoa raised two claims in his petition. First, he alleged that Oklahoma's procedure for handling competency-to-be-executed claims is constitutionally deficient because it leaves the decision to the warden rather than the courts. He objected that the procedure "does not provide any recourse to prisoners such as Ochoa who disagree with the actions (or, in this case, the inaction) of the Warden; and it does not provide for any input from Ochoa or his representatives, nor any opportunity to discover or contest information considered by the Warden (or the District Attorney), nor even a way in which to determine if the Warden has followed any minimal procedural safeguards." Habeas Petition at 22-23. Second, he alleged as a substantive matter that he is in fact incompetent to be executed. *Id.* at 25. After

briefing by both parties, the district court denied the petition and the associated motion for stay of execution, [5] and declined to issue a COA. This appeal followed.

## ASSESSMENT OF CLAIMS FOR COA

A COA is a jurisdictional prerequisite to our review. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Ochoa has failed to make such a showing.

### A. Challenge to Oklahoma Procedure

This court's recent decision in *Allen* rejected essentially the same challenge we face here regarding Oklahoma's procedures for addressing a prisoner's competency to be executed. *See Allen*, 2012 WL 4947821, at \*2-\*3. We held in *Allen* that the state's use of the warden as gatekeeper for the process was permissible in light of the availability of mandamus to provide judicial oversight of the warden's performance of that critical role. *Allen* was not published, but we find its reasoning persuasive. *See generally United States v. Scott*, 529 F.3d 1290, 1299 n.9 (10th Cir. 2008)

---

[5] The district court noted that Mr. Ochoa had not exhausted his state mandamus remedy, but exercised its discretion under 28 U.S.C. § 2254(b)(2) to deny relief on the merits, as requested by the respondent. This merits disposition obviated any need to consider a stay of execution to permit exhaustion.

- 5 -

(noting that although unpublished decisions are not binding, they "may be relied upon for their persuasive value").  Mr. Ochoa has not offered any convincing basis for diverging from the reasoning and result in *Allen.*

Although he initially asserted only a facial challenge to the state procedures, after the respondent pointed out the contrary holding in *Allen*, Mr. Ochoa asserted an as-applied challenge to Warden Trammell's failure to initiate incompetency proceedings under § 1005 in his particular case.  To prevail on such a challenge, Mr. Ochoa must demonstrate that he offered evidence sufficient to make the "substantial threshold showing of insanity" that *Panetti* held was a legitimate precondition to the state's duty to offer a hearing on a prisoner's competency to be executed.  *See Panetti*, 551 U.S. at 949-50.  As explained below in connection with Mr. Ochoa's substantive competency claim, he clearly failed to do this.

**B.  Substantive Claim of Incompetency to be Executed**

We deem it beyond reasonable debate that the district court properly rejected Mr. Ochoa's substantive claim of incompetency to be executed.  Mr. Ochoa did not offer a single expert opinion to support his claim, despite obtaining a psychological examination.  While certainly some abnormal behavior by Mr. Ochoa has been noted, there has been no observation of his inability to comprehend his imminent execution, let alone any diagnosis or clinical impression of insanity or incompetency.  More specifically, there has been no showing that Mr. Ochoa's rational understanding of his impending execution, and the reason for it, has been impaired.  *See Panetti*,

551 U.S. at 956-60 (discussing relevant competency inquiry for *Ford* claim). The record in this case does not remotely resemble that deemed sufficient as a threshold showing in *Panetti*, where four experts supported the petitioner's claim. *See id.* at 954-55. Even more telling, our record is substantially weaker than the record held plainly insufficient to support a *Panetti/Ford* claim in *Allen*, where the petitioner at least presented one expert opinion indicating temporary periods of insanity. *Allen*, 2012 WL 4947821, at *3.

Mr. Ochoa's request for a COA is DENIED and this appeal is DISMISSED. The motion for stay of execution is DENIED as moot.

Mr. Ochoa is advised that any petition for panel or en banc rehearing must be filed by 2:00 pm MST today. *See* Fed. R. App. P. 2 (noting court may "suspend any provision" of the rules for good cause).

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

12-6310 - *Ochoa v. Trammell*

**HARTZ**, Circuit Judge, concurring:

I would deny a certificate of appealability on the ground that Mr. Ochoa has not

exhausted his state remedies.  I would deny a stay because of his delay in raising the

claim of insanity and the unlikelihood of his prevailing on the merits.

Under Oklahoma law a warden to whom a prisoner has been delivered for

execution must inform the district attorney of the proper county if "there is good reason to

believe" that the prisoner is insane, and the district attorney must then file a petition to

initiate a jury trial on the question of sanity.  Okla. Stat. Ann. tit. 22, § 1005 (1910).[1]  As

shown by the decision of the Oklahoma Court of Criminal Appeals (OCCA) in *Allen v.*

*Workman*, No. MA-2012-307 (Okla. Crim. App., Apr. 10, 2012), the failure of the

warden to so inform the district attorney is reviewable by the OCCA through a petition

for a writ of mandamus, and the OCCA will independently determine the existence of

"good reason to believe."  *See id.* at 4 ("[W]e find that Allen, in this case, has not shown

---

[1] The statute states:

> If, after his delivery to the warden for execution, there is good reason to
> believe that a defendant under judgment of death has become insane, the
> warden must call such fact to the attention of the district attorney of the
> county in which the prison is situated, whose duty is to immediately file in
> the district or superior court of such county a petition stating the conviction
> and judgment and the fact that the defendant is believed to be insane and
> asking that the question of his sanity be inquired into. Thereupon, the court
> must at once cause to be summoned and impaneled from the regular jury
> list a jury of twelve persons to hear such inquiry.

Okla. Stat. Ann. tit. 22, § 1005.

with the record presented to this Court that there is a reasonable probability that his condition has deteriorated to a level of insanity from the time the jury determined that he was sane.").  I continue to believe that the Oklahoma procedure complies with *Ford v. Wainwright*, 477 U.S. 399, 417 (1986).  *See Allen v. Workman*, No. 12-6253, 2012 WL 4947821, at *3 (10th Cir. Oct. 18, 2012) (per curiam).

Principles of comity require that a prisoner claiming insanity first pursue relief under Oklahoma's statutory remedy, and that the federal courts show appropriate deference to the state court's decision.  *See* 28 U.S.C. § 2254.  Mr. Ochoa has not pursued mandamus relief in Oklahoma court.  Because he has not exhausted his state remedies, he is not entitled to relief in federal court.

Nor is he entitled to a stay of execution to provide him more time to pursue state relief.  Absent exceptional circumstances not present here, the time to initiate the state process (by advising the warden of the possibility of insanity and the intent to promptly present the requisite evidence) must be no later than when a stay of execution has been lifted and the State seeks an execution date.  Here, the United States Supreme Court denied Mr. Ochoa's petition for a writ of certiorari on October 1, 2012.  He did not oppose the application to set the execution date; and on October 10, 2012, the OCCA scheduled the execution for December 4.  Not until six weeks later, on November 20, 2012, did Mr. Ochoa submit a request to the warden concerning his alleged insanity, and he did not submit his § 2254 application until six days before the scheduled execution date.  "A court may consider the last-minute nature of an application to stay execution in

deciding whether to grant equitable relief." *Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam). This consideration weighs heavily against Mr. Ochoa. Although his claim of insanity may have deserved review if brought in a timely fashion, it is undeniably a weak claim (particularly in light of the district court's fact findings), certainly not sufficiently likely of success to justify a stay in the circumstances.